FILED 23 MAR '26 13:45 USDC-ORE

# IN THE UNITED STATES DISTRICT COURT

## FOR THE

## DISTRICT OF OREGON

## EUGENE DIVISION

**PERSIDA MYERS**, an individual,

      Plaintiff,

    v.

**DESCHUTES COUNTY, OREGON,**
a political subdivision of the State of Oregon; and
**THE BOARD OF COUNTY COMMISSIONERS OF DESCHUTES COUNTY,**

      Defendants.

Case No. 6:26-CV-00555-MC

---

**COMPLAINT FOR VIOLATIONS OF THE FAIR HOUSING ACT**
**(42 U.S.C. §§ 3604, 3617),**
**THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12132),**
**AND 42 U.S.C. § 1983**

**DEMAND FOR JURY TRIAL**

**TOTAL AMOUNT IN CONTROVERSY: Not less than $6,500,000**

COMPLAINT                 1

Pd 15909

# TABLE OF CONTENTS

Introduction ........................................................................................................................... 6

Jurisdiction and Venue ......................................................................................................... 7

Parties ................................................................................................................................... 8

Factual Background ............................................................................................................ 10

    A. The Property and the CN District ............................................................................ 10

    B. Legislative and Land Use Context: ORS 93.270(2) and Ordinance 2024-008 ....... 11

    C. Deschutes County Ordinance No. 2024-008, Section 13 ........................................ 13

    D. The Comparative Pattern—Identical Uses Retained in All Other Sub-Districts ..... 14

    E. The County's Own 2026 Admission ........................................................................ 17

    F. Impact on Plaintiff .................................................................................................. 18

    G. The 1989 Oregon Legislative Scheme: A Three-Tier Prohibition on Disability-Based
Exclusion ........................................................................................................................ 21

    H. ORS 93.270 and the Private Restriction History Affecting This Property ............... 23

    I. Plaintiff's Application for Residential Facility Further Establishes Deschutes
County Had Direct Knowledge of Her Intent to Develop as early as 2015 ..................... 26

    J. Property Devaluation After Removal of Permitted Residential Facility Use ............ 28

Claims for Relief ................................................................................................................ 30

First Claim for Relief — Fair Housing Act, 42 U.S.C. §§ 3604(f)(1) and 3604(f)(2) ............... 30

Second Claim for Relief — Fair Housing Act, 42 U.S.C. § 3617 ............................................... 33

Third Claim for Relief — Americans with Disabilities Act, Title II, 42 U.S.C. § 12132 .......... 34

Fourth Claim for Relief — 42 U.S.C. § 1983 ............................................................................. 36

Fifth Claim for Relief — Declaratory Judgment, 28 U.S.C. §§ 2201–2202 .............................. 38

Sixth Claim for Relief — Fifth Amendment Takings Clause, 42 U.S.C. § 1983 ....................... 42

Seventh Claim for Relief — ORS 93.270(1); ORS 197.020; ORS 197.663 .............................. 46

Prayer for Relief ................................................................................................................. 51

Verification ......................................................................................................................... 59

Demand for Jury Trial ........................................................................................................ 59

Exhibit A — Ordinance 2024-008 / 2026 Housekeeping Findings

Exhibit B — Deschutes County Assessor Records and Deed

Exhibit C — Land Use Application File No. 247-15-000646-SP

Exhibit D — Market Rate Analysis / Residential Care Facility Comparables

## TABLE OF AUTHORITIES

**Cases**

*Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127 (9th Cir. 2011)* ........................Prayer ¶7

*Bay Area Addiction Research & Treatment, Inc. v. City of Antioch,*
  *179 F.3d 725 (9th Cir. 1999)* ..............................................................................................¶2

*City of Cleburne v. Cleburne Living Center, 473 U.S. 432 (1985)*..................................fn.1, ¶78

*City of Edmonds v. Oxford House, Inc., 514 U.S. 725 (1995)* .............................................¶56

*City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687 (1999)* ......................fn.5

*City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981)*..............................Prayer ¶¶9, 15

*Community House, Inc. v. City of Boise, 490 F.3d 1041 (9th Cir. 2007)* ...............................¶65

*Dahl v. HEM Pharms. Corp., 7 F.3d 1399 (9th Cir. 1993)* ........................................ Prayer ¶7(a)

*Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861 (9th Cir. 2004)*  ........¶7

*Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir. 2001)* ................................................¶73

*Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982)* ..................................... ¶27, Prayer ¶7(a)

*Innovative Health Systems, Inc. v. City of White Plains, 117 F.3d 37 (2d Cir. 1997)* .............¶71

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399 (3d Cir. 1993)*...................¶7

*Knick v. Township of Scott, 588 U.S. 180 (2019)* .............................................¶¶88, 93, Prayer ¶16

*Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992)* .....................................¶¶89, 92

*Myers v. Owners of Certain Real Property in Deschutes County,*
*322 Or. App. 182, 519 P.3d 886 (2022)*  .............................................................................¶13

*Monell v. Department of Social Services, 436 U.S. 658 (1978)* ...............................................¶76

*Palazzolo v. Rhode Island, 533 U.S. 606 (2001)* .................................................................¶92

*Patsy v. Board of Regents, 457 U.S. 496 (1982)*................................................................fn.1, ¶81

*Penn Central Transportation Co. v. City of New York, 438 U.S. 104 (1978)* ............ ¶¶89, 91, 92

*Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941)*............................................fn.1

*San Pedro Hotel Co. v. City of Los Angeles, 159 F.3d 470 (9th Cir. 1998)* .............................¶57

*Springfield Education Ass'n v. Springfield School Dist. No. 19, 290 Or. 217 (1980)*..............¶84

*Tahoe-Sierra Preservation Council v. Tahoe Regional Planning Agency,*
  *535 U.S. 302 (2002)* ..............................................................................................¶¶92,91(c)

*Texas Dep't of Housing & Community Affairs v. Inclusive Communities Project, Inc.,* ...............
  *576 U.S. 519 (2015)* ............................................................................................................¶60

*Tovar v. Billmeyer, 609 F.2d 1291 (9th Cir. 1979)* ............................................................fn.1

*Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205 (1972)*

*Village of Arlington Heights v. Metropolitan Housing Development Corp.,*  ........................¶15
  *429 U.S. 252 (1977)* ..................................................................................... ¶¶22, 59, 78

**Legislative History**

H.R. Rep. No. 100-711 (1988)...............................................................................................¶36

Oregon Laws 1989, ch. 564 ................................................................. ¶¶19, 31, 33, 35, 36, 97

## Constitutional Provisions

U.S. Const. amend. V ................................................ Sixth Claim heading, ¶¶88, 89, Prayer ¶16
U.S. Const. amend. VII ...................................................................................... Jury Demand
U.S. Const. amend. XIV ..................................... fn.1, Sixth Claim heading, ¶¶88, 89, Prayer ¶16

## Federal Statutes

28 U.S.C. § 1331 ................................................................................................................... ¶1
28 U.S.C. § 1343 ................................................................................................................... ¶1
28 U.S.C. § 1367 .................................................................................... ¶81, Fifth Claim heading
28 U.S.C. § 1391(b) .............................................................................................................. ¶3
28 U.S.C. § 1746 ..................................................................................................... Verification
28 U.S.C. §§ 2201–2202 ............................................... ¶1, Fifth Claim heading, ¶¶86, 103
42 U.S.C. § 1983 ..................... Title, ¶¶1, 75–79, 88, 93, 95, Fourth Claim heading, Prayer ¶17
42 U.S.C. § 1988 ..................................................................................... ¶¶79, 95, Prayer ¶18
42 U.S.C. § 3601 et seq ........................................................................................................ ¶1
42 U.S.C. § 3602(b) ............................................................................................................ ¶56
42 U.S.C. § 3602(i) ..................................................................................................... ¶¶57, 61
42 U.S.C. § 3604(f)(1) .............................. Title, First Claim heading, ¶¶55, 57, 60, 77, Prayer ¶1
42 U.S.C. § 3604(f)(2) .................................... Title, First Claim heading, ¶¶55, 57, 60, Prayer ¶1
42 U.S.C. § 3613(a)(1)(A) ................................................................................................... ¶27
42 U.S.C. § 3613(c) ...................................................................................................... ¶¶1, 61
42 U.S.C. § 3613(c)(1) ................................................................................... Prayer ¶¶14, 15
42 U.S.C. § 3613(c)(2) ................................................................................................ Prayer ¶18
42 U.S.C. § 3617 ............................................. Title, Second Claim heading, ¶¶63, 65, Prayer ¶1
42 U.S.C. § 12101 et seq ...................................................................................................... ¶1
42 U.S.C. § 12131(1) .......................................................................................................... ¶69
42 U.S.C. § 12131(2) .......................................................................................................... ¶70
42 U.S.C. § 12132 ............................ Title, Third Claim heading, ¶¶68, 71, 73, 77, Prayer ¶¶1, 17
42 U.S.C. § 12205 ......................................................................................................... Prayer ¶18

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 19(a) ............................................................................................................. ¶7
Fed. R. Civ. P. 19(b) ............................................................................................................. ¶7
Fed. R. Civ. P. 38(b) ................................................................................................. Jury Demand

## Federal Regulations

28 C.F.R. § 35.130(g) ......................................................................................................... ¶71
28 C.F.R. Part 35 ................................................................................................................ ¶73

## Oregon Statutes

ORS 28.010 ........................................................................................................................ ¶86

ORS 93.270(3) ........¶¶33, 36, 38–41, 43, 82, 97, 99–101, 103, Prayer ¶¶1, 4, 7th Claim heading
ORS 93.270(2) ............................................................................................................................¶13
ORS 197.015 ..............................................................................................................................¶98
ORS 197.015(10) .......................................................................................................................¶98
ORS 197.020 .................. fn.1, ¶¶29, 40, 59, 83, 85, 98–103, Prayer ¶¶1, 3, 5, 7th Claim heading
ORS 197.663 .....¶¶19, 31, 32, 36, 37, 82, 84, 97, 99, 100, 103, Prayer ¶¶1, 4, 7th Claim heading
ORS 197.665 ............................................................... ¶¶17, 34, 43, 58, 82–85, Prayer ¶¶2–6
ORS 197.667 ............................................................ ¶¶17–19, 35, 37, 58, 84–86, Prayer ¶¶1, 6
ORS 197.667(3) ...........................................................fn.1, ¶¶18, 22, 24, 35, 84, 85, 99
ORS 197.825 .......................................................................................................fn.1, ¶81
ORS Chapter 203 ......................................................................................................¶5
ORS 443.400–443.455 ............................................................................ ¶¶4, 12, 29, 47, 52

**Deschutes County Code**

DCC 18.108 ................................................................................................ ¶¶5, 10, 14
DCC 18.108.150 ................................................................ ¶¶9, 11, 14, 15, 23, Prayer ¶¶1, 6
DCC 18.108.150(A) ....................................................................................... ¶¶11, 89
DCC 18.116.210 ................................................................................. ¶¶23, 43, Prayer ¶2
DCC Title 18 ............................................................................... ¶¶5, 43, Prayer ¶6

**INTRODUCTION**

This is a federal civil rights action arising from Deschutes County's targeted elimination of the only two uses in the Sunriver Urban Unincorporated Community ("UUC") Community Neighborhood ("CN") District whose identities are defined entirely by the disability status of their residents—"residential home" (1–5 persons with disabilities) and "residential facility" (6–15 persons with disabilities)—while preserving all other uses in the CN District. The county accomplished this through Deschutes County Ordinance No. 2024-008, Section 13, effective January 7, 2025. *See* Exhibit A.

The property affected is Lot 1, Tract C, Replat of Tract C Deer Park I, Deschutes County, Oregon ("Property"), owned by Plaintiff Persida Myers located within the CN District, and intended for use as a licensed residential facility under ORS 443.400–443.455. Before January 7, 2025, residential home and residential facility were permitted outright in the CN District. After Ord. 2024-008 § 13 took effect, they were gone—the only uses deleted from that sub-district's entire permitted use list of sixteen uses.

The county's own 2026 legislative findings, produced in its 2026 Housekeeping Text Amendment proceedings (File No. 247-26-000007-TA), *see* Exhibit A, p. 90, admit that Ord. 2024-008 eliminated uses beyond what any statutory purpose required and that residential facilities were "*unintentionally excluded from certain zones which previously would have allowed the use.*" Yet the county's 2026 corrective ordinance failed to restore those uses in any of the affected zones — including RS, RM, R, CG, and CN.

This surgical deletion of disability-defined uses violates the Fair Housing Act, 42 U.S.C. §§ 3604(f)(1), 3604(f)(2), and 3617; Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132; and 42 U.S.C. § 1983. Plaintiff seeks declaratory relief, a permanent injunction

reinstating residential home and residential facility as permitted uses in the CN District, compensatory damages, and attorney fees.

The total amount in controversy, not less than $6,500,000, comprising compensatory damages for diminution in property value ($735,220), lost development opportunity ($3,900,000), lost net operating income and carrying costs accruing at approximately $48,352 per month from January 7, 2025 through judgment, out-of-pocket investment expenditures, just compensation for the regulatory taking, and punitive damages under the Fair Housing Act.

## JURISDICTION AND VENUE[1]

1. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Plaintiff's claims arising under the Fair Housing Act, 42 U.S.C. §§ 3601–3619; the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213; and 42 U.S.C. § 1983. This Court has

---

[1] *Pullman* abstention is inapplicable, and exhaustion of state administrative remedies before the Oregon Land Use Board of Appeals (LUBA) is not required. Three independent grounds foreclose both doctrines. First, exhaustion of state administrative remedies is categorically not required for claims brought under 42 U.S.C. § 1983. *Patsy v. Board of Regents,* 457 U.S. 496, 516 (1982). Second, LUBA is a state administrative appellate tribunal with jurisdiction limited to reviewing specific land use decisions under ORS 197.825. LUBA has no jurisdiction to adjudicate claims arising under the Fair Housing Act, the Americans with Disabilities Act, or the Equal Protection Clause; it cannot award damages under 42 U.S.C. § 3613(c) or issue a federal civil rights injunction; and it is structurally incapable of providing any of the relief sought herein. Routing Plaintiff's federal civil rights claims to LUBA would not constitute exhaustion — it would be dismissal without remedy. Third, *Pullman* abstention requires that (1) the case present an unsettled question of state law and (2) resolution of that state law question could eliminate the need to reach the federal constitutional question. *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496 (1941). Neither condition is met. The state law questions presented — whether ORS 197.667(3) is permissive or mandatory as applied to the CN District — do not eliminate Plaintiff's equal protection claim under *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432 (1985), which arises independently under the Fourteenth Amendment and survives any conceivable resolution of state law. A court that abstains pending state court resolution of a question whose answer leaves the federal constitutional claim fully live accomplishes nothing but delay. *Tovar v. Billmeyer,* 609 F.2d 1291, 1293 (9th Cir. 1979). Plaintiff's state law claims under ORS 197.020, ORS 197.665, and ORS 197.667(3) provide alternative and cumulative grounds for relief but their resolution does not eliminate the federal constitutional injury: the elimination of disability-defined uses from the CN District violates the FHA and Equal Protection regardless of how Oregon law resolves any pendant state question.

COMPLAINT                                             7

authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 and under 42 U.S.C. § 3613(c).

2.    Plaintiff's claims are ripe. The Ordinance facially eliminates the challenged uses from the CN District as a matter of law; no permit application and denial is required to ripen a facial challenge to a discriminatory zoning enactment. *Bay Area Addiction Research & Treatment, Inc. v. City of Antioch,* 179 F.3d 725, 731 (9th Cir. 1999).

3.    Venue is proper in the District of Oregon, Eugene Division, under 28 U.S.C. § 1391(b) because the Property is located in Deschutes County, Oregon, and because a substantial part of the events giving rise to Plaintiff's claims occurred in Deschutes County. Under the Local Rules of the District of Oregon, divisional venue lies in the Eugene Division (Division Code 6), which encompasses Deschutes County.

## PARTIES

4.    Plaintiff Persida Myers is a natural person and co-owner of record of the Property, legally described as Lot 1, Tract C, Replat of Tract C Deer Park I, Deschutes County, Oregon. Plaintiff Myers intends to use the Property as a licensed residential facility as defined under ORS 443.400–443.455, to provide residential care, treatment, or training to persons with disabilities.

5.    Defendant Deschutes County, Oregon ("County") is a political subdivision of the State of Oregon organized under ORS Chapter 203, with its principal offices at 1300 NW Wall Street, Bend, Oregon 97703. The County exercises land use regulatory authority over the Property through its enacted and enforced zoning code, Deschutes County Code ("DCC") Title 18, including DCC Chapter 18.108 governing the Sunriver Urban Unincorporated Community Zone.

COMPLAINT                                        8

6. Defendant Board of County Commissioners of Deschutes County ("Board") is the governing body of Deschutes County and the entity that enacted Ordinance No. 2024-008. The Board is sued in its official capacity.

7. Under Ninth Circuit authority, a party is not required under FRCP 19(a) where complete relief can be afforded among the existing parties and where the absent party's interest will not, as a practical matter, be impaired or impeded by resolution of the action. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004). All four conditions of that framework are satisfied here. First, Plaintiff's damages claims are expressly limited throughout this complaint to her 50% undivided ownership interest, and complete relief on those claims does not require the 50% Clapa Trust's participation. Second, Plaintiff's injunctive and declaratory relief runs against Deschutes County's zoning ordinance — DCC 18.108.150 as amended by Ord. 2024-008 § 13 — not against the Property or any interest held by the Clapa Trust; reinstatement of permitted use rights inures equally to both co-owners and does not adjudicate any dispute between them. Third, the Clapa Trust's interest will not be impaired or impeded by resolution of this action; it holds the same use rights at issue, and restoration of those rights benefits the Trust equally. Fourth, Defendants adequately represent any interest the Clapa Trust might share in the zoning classification question, because the County's defense of Ord. 2024-008 is directed at the ordinance's legality across the CN District, not at any particular co-ownership interest. See also *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405 (3d Cir. 1993) (co-owner not a required party where plaintiff's damages are expressly limited to own interest and injunctive relief operates on defendant's conduct rather than the property). The Clapa Trust is not an indispensable party under FRCP 19(b) because equity and good conscience do not require joinder: dismissal for non-joinder

COMPLAINT                                    9

would extinguish Plaintiff's federal civil rights claims — which are personal to her and not contingent on the Trust's participation — without any adequate alternative remedy. No D. Oregon court applying FRCP 19 has required joinder of a co-owner in a federal civil rights zoning action where the plaintiff has expressly limited her damages to her own fractional interest and the injunctive relief sought operates on the defendant government's conduct rather than on the title or ownership status of the property.

## FACTUAL BACKGROUND

### A.    The Property and the CN District

8.    Plaintiff is co-owner of the Property, tax lots 191128CA01702 and 191128CB07100, 8.76 acres located within the Sunriver Urban Unincorporated Community ("Sunriver UUC") in Deschutes County, Oregon. *See* Exhibit B.

9.    The Property is designated within the Community Neighborhood ("CN") sub-district of the Sunriver UUC Zone, governed by DCC 18.108.150.

10.    The Sunriver UUC Zone was established by Deschutes County Ordinance No. 97-076 and is codified in DCC Chapter 18.108. The UUC Zone encompasses nineteen distinct sub-districts, including the single-unit residential (RS), multi-unit residential (RM), commercial (C), town center (TC), resort (R), community general (CG), community recreation (CR), community limited (CL), and community neighborhood (CN) sub-districts, among others.

11.    Plaintiff acquired the Property in 2016. At the time of acquisition, and continuously until January 7, 2025, the CN District's permitted outright uses included "residential home" (item 13) and "residential facility" (item 14), among sixteen total permitted uses. DCC 18.108.150(A) (pre-Ord. 2024-008).

12.    Plaintiff intends to use the Property as a licensed residential facility under ORS 443.400–443.455 to provide residential care, treatment, or training to persons with disabilities. That use was a permitted outright use under the CN District at the time Plaintiff acquired the Property.

**B. Legislative and Land Use Context: ORS 93.270(2) and Ordinance 2024-008**

13. Oregon's enactment of HB 2534 in 2021 — codified as ORS 93.270(2) — provides essential statutory context for evaluating the discriminatory purpose underlying Ordinance 2024-008. ORS 93.270(2) prohibits planned communities from enforcing recorded instrument provisions that restrict use on the basis of disability, including restrictions on licensed residential facilities. However, the enacted statute limits its reach to communities that already "include units used for residential purposes," a threshold condition that preserved in statutory form the "uniform exclusion" defense affirmed by the Oregon Court of Appeals in *Myers v. Owners of Certain Real Property in Deschutes County*, 322 Or App 182, 519 P3d 886 (2022). In that decision, the court sustained a deed-restriction defense predicated on the theory that a planned community's restrictions were non-discriminatory where they uniformly excluded all residential uses — not singling out licensed residential facilities — with the relevant measure of "permitted uses" drawn from the community's Consolidated Plan rather than the controlling county zoning code, which at that time expressly listed residential home and residential facility as permitted outright uses in the CN District under DCC 18.108.150(A). ORS 93.270(2)'s "includes units used for residential purposes" threshold accordingly left intact a class of planned communities — specifically those that could demonstrate uniform residential exclusion as a matter of official record — that would remain outside the statute's reach.

14. Against that statutory backdrop, Deschutes County undertook the amendment process culminating in Ordinance 2024-008. The CN District had included residential home (item 13) and residential facility (item 14) as permitted outright uses under DCC 18.108.150(A) continuously since the adoption of Ordinance 97-076, a period of nearly three decades. Plaintiff acquired the Property in 2016 in direct reliance on those permitted uses, publicly pursued a licensed residential facility development on it from that date forward, and filed a federal Fair Housing Act complaint (HUD File No. 10-19-1175-8) arising from denial of her reasonable accommodation request for that use — a complaint that remained pending and unresolved throughout the amendment process. On January 7, 2025, the County adopted Ordinance 2024-008, eliminating both residential use categories from the CN District's permitted outright use list. The practical legal effect of that elimination — as the County was or should have been aware — was to create, for the first time as a matter of official county land use law, the factual predicate for ORS 93.270(2)'s "uniform exclusion" threshold: a CN District containing no permitted residential uses, such that any restriction on licensed residential facilities could be characterized not as disability-based discrimination but as uniform residential exclusion.

15. The County adopted Ordinance 2024-008 with knowledge of the following material facts: (a) Plaintiff held the Property in the CN District and had publicly pursued a licensed residential facility use since 2016; (b) her federal FHA complaint arising from that use remained pending and unresolved; (c) the residential facility use she sought had been a permitted outright use in the CN District at the time of her property acquisition and continuously thereafter; and (d) the Oregon Court of Appeals had affirmed that a planned community's uniform residential exclusion — measured against the Consolidated Plan rather than the county zoning code — could survive as a non-discriminatory restriction under ORS 93.270(2). Ordinance 2024-008

retroactively manufactured the one element that had been absent from that defense: an official county land use determination eliminating residential uses from the CN District, such that the private Consolidated Plan's residential exclusion and the county zoning code would for the first time be aligned. The elimination of a nearly thirty-year-old permitted use category — without identified independent planning justification, with actual knowledge of Plaintiff's pending FHA-protected interests, and at the precise moment required to align county zoning with the ORS 93.270(2) uniform-exclusion threshold — reflects discriminatory purpose and deliberate indifference to Plaintiff's federally protected rights and forms the factual predicate for each of Plaintiff's claims herein.

**C. Deschutes County Ordinance No. 2024-008, Section 13**

16. On October 14, 2024, Deschutes County recorded Ordinance No. 2024-008 (the "Ordinance"), effective January 7, 2025. Section 13 of the Ordinance amended DCC Chapter 18.108, including DCC 18.108.150 governing the CN District. Section 13 deleted exactly two uses from the CN District's permitted use list: (1) "*residential home*" (formerly item 13), and (2) "*residential facility*" (formerly item 14). All other uses were preserved. Other Sunriver UUC sub-district lost both uses through this Ordinance, see table in paragraph 20. The post-Ordinance CN District contains sixteen permitted uses, none of which is disability-linked.

17. The Ordinance's stated rationale, set forth in Exhibit A (Exhibit W "Findings"), was to align DCC Chapter 18.108 with ORS 197.665 and 197.667, the state statutes governing residential home and residential facility siting. Defendants claimed residential facilities should be permitted only where multi-family dwellings are permitted.

18. The stated rationale is legally erroneous and pretextual. ORS 197.667(3) expressly provides that "*[a] city or county may allow a residential facility in a residential zone other than*

*those zones described in subsections (1) and (2) of this section, including a zone where a single-family dwelling is allowed.*" Subsections (1) and (2) of ORS 197.667 establish mandatory minimums. Subsection (3) expressly authorizes counties to go further. The statute does not authorize elimination of previously permitted uses. Defendants inverted the statute's purpose.

19.    ORS 197.667 was enacted in 1989, Or Laws 1989, ch. 564 § 5, as part of a coordinated statutory package whose legislative findings—codified at ORS 197.663—state: "It *is the policy of this state that persons with disabilities and elderly persons are entitled to live as normally as possible within communities and should not be excluded from communities because of their disability or age.*" The 1989 package simultaneously enacted ORS 93.270(1), which voids private deed restrictions that exclude disability-defined residential uses; ORS 197.665, which mandates residential home permissions in single-family zones; and ORS 197.663, which codifies the legislature's anti-exclusion policy findings. The three statutes form an interlocking scheme designed to close every avenue of disability-based residential exclusion—private deed restriction, local zoning code, and discriminatory land use decision—simultaneously. Defendants used a statute designed to guarantee inclusion of disability-related housing as authority to exclude it.

### D.    The Comparative Pattern—Identical Uses Removed in Other Sub-Districts

20.    The surgical nature of the deletion is revealed by comparing the treatment of residential home and residential facility across all Sunriver UUC sub-districts following Ord. 2024-008, as confirmed through Deschutes County present data:

| Sub-District BEFORE Ord. 2024-008 | Single Unit-Dwelling | Residential Home | Residential Facility |
|---|---|---|---|
| RS (Single-Unit Residential) | Permitted | Permitted | Permitted |
| RM (Multi-Unit Residential) | Permitted | Permitted | Permitted |
| C (Commercial) | N/A | N/A | Permitted |
| TC (Town Center)[2] | N/A | N/A | Permitted |
| R (Resort) | N/A | Permitted | Permitted |
| CG (Community General) | N/A | Permitted | Permitted |
| CN (Community Neighborhood) | N/A | PERMITTED | PERMITTED |
| Sub-District AFTER[3] Ord. 2024-008 | Single Unit-Dwelling | Residential Home | Residential Facility |
| RS (Single-Unit Residential) | Permitted | Removed | Removed |
| RM (Multi-Unit Residential) | Permitted | Removed | Removed |
| C (Commercial) | N/A | N/A | Permitted |
| TC (Town Center) | N/A | N/A | Permitted |
| R (Resort) | N/A | Removed | Permitted |
| CG (Community General) | N/A | Removed | Removed |
| CN (Community Neighborhood) | N/A | REMOVED | REMOVED |

21.    The surgical nature of this deletion becomes even more apparent when the ownership of the sub-districts retaining residential home and residential facility as permitted uses is considered. Following Ord. 2024-008, the only Sunriver UUC sub-districts in which those uses remain permitted are sub-districts in which Sunriver Resort Limited Partnership is, upon information and belief, the predominant or exclusive landowner. SRLP is a commercial hospitality enterprise; it has never operated, proposed to operate, or indicated any intent to develop a licensed residential care facility or residential home on its holdings. The permission that survives in Resort-owned sub-districts is therefore a nominal one — legally present on paper

---

[2] The TC (Town Center) sub-district is a zoning classification that exists in DCC Chapter 18.108 but has not been assigned to any parcel within the Sunriver UUC. No property owner holds TC-zoned land. The residential facility permission nominally retained in TC is therefore incapable of exercise by any person and carries no practical significance in the comparative analysis.

[3] The AFTER column reflects the current state of the Deschutes County Code as confirmed by the County's own online zoning code database, incorporating both Ordinance 2024-008 and any subsequent amendments including the 2026 housekeeping proceedings under File No. 247-26-000007-TA.

COMPLAINT                                    15

but practically inert, because the landowner holding those permissions will never invoke them. The result is a zoning framework in which the only property in the Sunriver UUC where a licensed residential facility could realistically ever be sited — Plaintiff's Property, which was acquired specifically for that purpose and has been in active development planning since 2015 — is precisely the property from which that use was surgically excised. Ord. 2024-008 § 13 did not just restrict licensed residential facility uses across Sunriver; it eliminated them from the one sub-district where the owner purchased the property with that intent.

22.   The surgical nature of the targeting is fully revealed not by Ord. 2024-008 alone, but by the County's 2026 corrective proceedings. The County's own 2026 Housekeeping Findings acknowledge that the elimination of these uses was over-broad and exceeded any statutory purpose and expressly state that the 2026 amendments would reinstate those uses "in the relevant zones." Despite that commitment, the 2026 housekeeping ordinance has failed to reinstate residential home or residential facility in RS, RM, R, CG, or CN — leaving virtually the entire system-wide elimination intact. The County reviewed its own discriminatory over-elimination, acknowledged it publicly in legislative findings, promised to correct it, and then failed to do so in every zone that matters. That compounded failure — acknowledging the wrong, committing to correct it, and then not correcting it — is independently probative of discriminatory intent under *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 267–68 (1977). The failure to restore CN specifically, where Plaintiff's Property is located, is the targeted act. The failure to restore RS, RM, R, and CG is the systemic act. Both are independently actionable and cumulatively establish the discriminatory pattern. The 2026 Findings do not identify any statute that precludes residential facilities in the CN District, because none exists — ORS 197.667(3) does not preclude them.

23. Before Ord. 2024-008, DCC 18.116.210 provided that "*[r]esidential homes and residential facilities shall be permitted in the same manner that single family dwellings are permitted under DCC Title 18.*" Ord. 2024-008 deleted that equivalence rule and then pointed to the absence of the rule it had just deleted as justification for eliminating the uses from CN. The County manufactured the gap it then relied upon.

### E.  The County's Own 2026 Admission

24. On or about January 8, 2026, Deschutes County Planning Division initiated housekeeping text amendments, File No. 247-26-000007-TA (Ord. 2026-0XX). The Findings for that 2026 **housekeeping ordinance** state: "*The intent of these previous amendments [Ord. 2024-008] was to continue allowing residential homes and residential facilities in all areas where they were previously allowed, except those specific zoning districts which are now precluded by statute. However, residential facilities were unintentionally excluded from certain zones which previously would have allowed the use. The proposed amendments would reinstate those uses in the relevant zones.*" Deschutes County Planning Division, Findings—Housekeeping Text Amendments, File No. 247-26-000007-TA, at 4 (2026). Notably, the 2026 Findings do not identify which statute precludes residential facilities in the CN District, because ORS 197.667(3) does not preclude them.

25. Despite this acknowledgment that Ord. 2024-008 was over-broad, and despite the 2026 "housekeeping ordinance" reinstating those uses in other affected zones, the 2026 corrective ordinance does not reinstate residential home or residential facility in the CN District. Defendants have reviewed the harm, acknowledged it, and delivered no meaningful correction in any affected zone.

### F.  Impact on Plaintiff

26.   Since January 7, 2025, Plaintiff has been deprived of her established right to use the Property as a licensed residential facility. That right existed as a permitted outright use from acquisition in 2016 until Ord. 2024-008 took effect. The combined real market value of the two CN-District parcels comprising the Property—Deschutes County Account Nos. 197279 and 269813—peaked at $3,595,180 as of January 1, 2024. Following the recording of Ord. 2024-008 on October 14, 2024, and its effective date of January 7, 2025, the combined assessed real market value declined to $3,000,000 as of January 1, 2025, a loss of $595,180 reflecting a 16.6 percent reduction in a single assessment cycle. Plaintiff's 50 percent ownership interest represents an attributable decline of not less than $297,590. The land-only parcel (Account 269813) declined from $709,280 to $591,860—a drop of $117,420—confirming that the market has already priced in the loss of residential facility use from the CN District.

27.   Defendants' conduct constitutes a continuing violation. Each day Defendants enforce Ord. 2024-008 § 13 as applied to the CN District—prohibiting disability-defined uses that are permitted in comparable sub-districts—constitutes a fresh discriminatory act. The two-year limitations period under 42 U.S.C. § 3613(a)(1)(A) runs from the most recent act of enforcement, which is ongoing. Plaintiff has not delayed unreasonably in seeking injunctive relief. From September 1, 2025 through March 2026, Plaintiff was engaged in parallel federal proceedings directly arising from the same pattern of disability-based exclusion that Ord. 2024-008 § 13 furthers: the HUD administrative complaint (File No. 10-19-1175-8) has remained pending since August 2019 and *Myers v. HUD,* No. 25-3237 (D.D.C.) was filed and is actively litigated. During that period, Plaintiff was also monitoring the County's 2026 housekeeping proceedings to determine whether the County would voluntarily correct the CN District exclusion consistent with its stated intent to restore erroneously eliminated uses. The 2026

housekeeping ordinance's deliberate omission of the CN District from the restoration—the final act confirming that continued enforcement of the CN exclusion is intentional rather than inadvertent—crystallized the discriminatory character of the ongoing violation and established that voluntary correction would not occur. Filing this action promptly after that determination does not constitute delay, and no laches runs against a continuing violation of federal civil rights statutes. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81 (1982) (continuing violation doctrine; limitations period runs from last discriminatory act). Each day Defendants enforce Ord. 2024-008 § 13 in the CN District is a fresh act of discrimination, and Plaintiff's damages and irreparable harm have been accruing throughout.

28. The filing of this action on March 20, 2026, creates an immediate procedural risk that warrants contemporaneous temporary restraining order relief. Under the Local Rules of the District of Oregon, Defendants have until **approximately April 9, 2026,** to respond to this complaint and to the simultaneously filed Motion for Preliminary Injunction. That 20-day window is precisely the interval in which Defendants could initiate and adopt a CN-only text amendment under abbreviated housekeeping procedures — restoring residential home and residential facility in the CN District alone while leaving the system-wide elimination in RS, RM, CG, and R intact — and present that partial legislative act to this Court as a basis for mootness before any briefing on the preliminary injunction has occurred. Plaintiff has accordingly filed a contemporaneous request for a temporary restraining order, or in the alternative an order to show cause returnable before April 8, 2026, prohibiting Defendants from taking targeted legislative action designed to alter the scope of Plaintiff's injunctive claims during the pendency of briefing. CN-only restoration would not moot Plaintiff's injunctive claims for the reasons set forth in the Prayer for Relief at ¶7, but litigating that question after the

COMPLAINT                                          19

fact imposes precisely the kind of procedural burden on a civil rights plaintiff that the Fair Housing Act's broad remedial structure was designed to prevent. Plaintiff is entitled to have this Court reach the merits of her preliminary injunction motion before Defendants can attempt to restructure those merits through targeted partial legislation.

29. Plaintiff's intent to develop the Property as a licensed residential facility was known to Deschutes County well before Ord. 2024-008 was enacted. As early as 2015, prior to purchasing the Property, Plaintiff spoke directly with Will Groves, a Deschutes County Senior Planner, specifically inquiring about its suitability for a licensed residential facility under ORS 443.400–443.455. Plaintiff continued those communications after acquiring the Property in 2016, further establishing on the record her intended use. The surgical elimination of exactly the two uses Plaintiff had publicly and repeatedly identified as her intended use—from exactly the one sub-district where her Property sits—cannot be explained by neutral planning objectives when the County's own senior planning staff had direct, documented knowledge of that intent. This pattern is independently prohibited by ORS 197.020, which provides that physical disability shall not be an adverse consideration in any land use decision.

30. Plaintiff has further been subjected to a sustained and compounding pattern of disability-based discrimination. In August 2019, Plaintiff filed a formal Fair Housing Act complaint with HUD, File No. 10-19-1175-8, against the Sunriver Owners Association ("SROA") or Sunriver Resort ("SRLP") arising from SROA/SRLP's systematic efforts to prevent Plaintiff from using property within Sunriver for disability-related residential purposes. That complaint has remained pending and unresolved for over six years, during which HUD has failed to issue a final written determination—a delay that is itself the subject of a separate federal action, *Myers v. HUD,* No. 25-3237 (D.D.C.). The County's adoption of Ord. 2024-008 § 13—

which accomplished through public zoning law what SROA/SRLP had been attempting through private restriction—constitutes a continuation and escalation of that same discriminatory pattern. Deschutes County has previously entered formal ADA Title II settlement agreements with the United States Department of Justice, placing it on documented federal notice of its obligations to persons with disabilities prior to enactment of Ordinance 2024-008.

**G.    The 1989 Oregon Legislative Scheme: A Three-Tier Prohibition on Disability-Based Exclusion**

31.    In 1989, the Oregon Legislative Assembly enacted Oregon Laws 1989, chapter 564, a coordinated statutory package addressing the documented statewide problem of disabled and elderly persons being systematically excluded from communities through three distinct mechanisms: (1) private deed restrictions and covenants prohibiting disability-related residential use; (2) local zoning codes that failed to treat disability-defined residential uses equivalently to single-family uses; and (3) local zoning codes that expressly prohibited residential facilities. The legislature addressed each mechanism with a separate statutory provision, creating an interlocking scheme of protection that closed every avenue of exclusion simultaneously. Every provision at issue — ORS 93.270(1), ORS 197.663, ORS 197.665, and ORS 197.667 — carries the same session law citation: Oregon Laws 1989, chapter 564. They were enacted as parts of a single coordinated act, not as three separate legislative decisions, because the problem they addressed — disability-based residential exclusion — was one problem expressed through multiple instruments.

32.    The legislature codified its policy findings at ORS 197.663, which provides: "It is the policy of this state that persons with disabilities and elderly persons are entitled to live as

normally as possible within communities and should not be excluded from communities because of their disability or age."

33. The *first tier* addressed private deed restrictions. ORS 93.270(1) provides that any condition, restriction, or limitation in a conveyance of real property that restricts the use of the property on the basis of disability—including by prohibiting occupancy by persons with disabilities or limiting the use of property for disability-defined residential facilities—is void as against public policy and unenforceable.

34. The *second tier* addressed zoning codes. ORS 197.665 mandates that residential homes "shall be a permitted use in any residential zone that allows for the development of single-family dwellings, and any other zone where a single-family dwelling may be sited as a permitted use." This provision is mandatory and self-executing.

35. The *third tier* addressed residential facilities for six to fifteen persons with disabilities. ORS 197.667 establishes minimum mandatory zoning permissions for residential facilities and ORS 197.667(3) expressly authorizes counties to go further: "A city or county may allow a residential facility in a residential zone other than those zones described in subsections (1) and (2) of this section, including a zone where a single-family dwelling is allowed." The legislature thus expressly contemplated and authorized exactly what Deschutes County had done before Ord. 2024-008: permitting residential facilities in the Community Neighborhood District.

36. The three tiers of the 1989 scheme are mutually reinforcing by design. A county cannot accomplish through public zoning what ORS 93.270(1) prohibits through private restriction. The statutory scheme forecloses each avenue of exclusion in sequence so that no mechanism—public or private, formal or informal—can be used to push disabled persons out of residential communities. The same framework was embedded in federal law one year earlier.

The House Judiciary Committee Report accompanying the Fair Housing Amendments Act of 1988, H.R. Rep. No. 100-711 at 18 (1988), stated that the FHAA was designed to prohibit disability-based residential exclusion accomplished through "land use regulations, restrictive covenants, and conditional or special use permits" — listing both mechanisms in the same sentence as co-equal targets of the same prohibition. Oregon's 1989 chapter 564 codified that identical framework at the state level: ORS 93.270(1) addresses the restrictive covenant mechanism; ORS 197.667 addresses the land use regulation mechanism; and ORS 197.663 is the common policy foundation that explains why neither mechanism may be used to accomplish what the other cannot. A county that invokes its zoning authority to accomplish what ORS 93.270(1) renders void in private instruments is doing precisely what both Congress in 1988 and the Oregon legislature in 1989 identified as the problem to be solved.

37. Deschutes County was fully aware of this three-tier statutory scheme at the time of Ord. 2024-008's enactment. The Ordinance's stated rationale—alignment with ORS 197.667— demonstrates that county staff had directly reviewed ORS 197.663 through 197.670. Yet the Ordinance inverted the scheme's purpose: it used a statute designed to guarantee disability housing inclusion as authority to eliminate it from the one sub-district where Plaintiff's Property is located.

**H.    ORS 93.270 and the Private Restriction History Affecting This Property**

38. SROA/SRLP, a private homeowners association governing the Sunriver community in which the Property is located, has for years enforced private deed restrictions and governing documents in an effort to prevent Plaintiff from using the Property for disability-related residential purposes. In August 2019, Plaintiff filed a formal Fair Housing Act complaint with

HUD, File No. 10-19-1175-8, arising from SROA/SRLP's systematic exclusionary enforcement. That complaint has remained pending and unresolved for over six years.

39.    The recorded deed restrictions and governing documents SROA/SRLP has relied upon constitute conditions, restrictions, or limitations on the use of the Property on the basis of disability within the meaning of ORS 93.270(1). To the extent any such recorded instrument prohibits occupancy by persons with disabilities, limits the use of the Property for disability-defined residential care, or restricts the siting of a licensed residential facility on the Property, those provisions are void and unenforceable under ORS 93.270(3).

40.    Deschutes County's adoption of Ord. 2024-008 § 13 accomplished through public zoning authority precisely what ORS 93.270(3) declares void when accomplished through private deed restriction: the elimination of residential home and residential facility as permitted uses from the CN District. ORS 197.020 expressly extends that prohibition to land use decisions: "[p]hysical disability shall not be an adverse consideration in making a land use decision." A land use decision motivated by the same exclusionary purpose that ORS 93.270(3) renders void in private instruments is independently prohibited by ORS 197.020.

41.    The temporal sequence of exclusionary acts directed at Plaintiff's Property further evidences the coordinated nature of the scheme. SROA/SRLP began private restriction enforcement in or before 2015. In May 2019 Plaintiff filed a Petition to Remove Discriminatory Restrictions under ORS 93.272. Plaintiff filed her HUD FHA complaint in August of 2019. After six years of HUD inaction, the County enacted Ord. 2024-008 § 13 in October 2024—surgically deleting the only two disability-defined uses from the CN District while Plaintiff's HUD complaint remained pending. The sequential escalation from private restriction to public zoning elimination, targeting the same Plaintiff, the same Property, and the same disability-related use,

constitutes a continuing pattern of exclusion that both ORS 93.270(3) and ORS 197.020 independently prohibit.

42.    Plaintiff has submitted a public records request to Deschutes County for all communications between county staff and SROA/SRLP, SROA/SRLP's legal counsel, or SROA/SRLP representatives during the planning file 247-24-000417-TA proceeding that produced Ord. 2024-008. Discovery in this action will further develop the evidentiary basis for the coordination claim.

43.  The definitional manipulation effected by Ord. 2024-008 was not limited to the removal of residential home and residential facility from individual sub-districts. Before Ord. 2024-008, DCC 18.116.210 provided that residential homes and residential facilities "shall be permitted in the same manner that single family dwellings are permitted under DCC Title 18" — a local codification of ORS 197.665's mandatory equivalence command, operative across all DCC Title 18 zones. Ord. 2024-008 deleted DCC 18.116.210 in its entirety, eliminating the operative mechanism by which ORS 197.665's mandatory command was implemented within the Deschutes County Code. The county then pointed to the absence of that deleted equivalence rule as the justification for removing residential home and residential facility from every zone from which they were subsequently eliminated. This two-step sequence — deleting the implementation mechanism and then using the resulting gap as authority for elimination — constitutes a manufactured conflict with ORS 197.665 that state law resolves in favor of the mandatory statutory standard. A county cannot suspend the operation of a mandatory, self-executing state statute by deleting the local rule that implemented it. ORS 197.665's directive that residential homes "shall be a permitted use" in any zone allowing single-family dwellings operates independently of and is not contingent upon the existence of a local equivalence rule.

The deletion of DCC 18.116.210 created a conflict between the DCC as amended and ORS 197.665 that cannot be resolved in favor of the local ordinance.

44.    Upon information and belief, the definitional approach embodied in Ord. 2024-008 — specifically, the deletion of the ORS 197.665 equivalence rule followed by the sub-district-by-sub-district elimination of residential home and residential facility uses — was developed or promoted with the participation of private planned community associations or their representatives as a replicable template applicable to other Oregon counties facing similar disability-related residential development proposals. The same organizations — SROA/Sunriver Resort and affiliated planned community lobbying groups — that participated in the 2021 HB 2534 legislative process seeking to limit ORS 93.270(2)'s anti-discrimination prohibition through a "uniform restriction" carveout, and that have enforced private deed restrictions against Plaintiff's Property since before 2019, had both the motive and the demonstrated history of legislative engagement to promote a zoning strategy that accomplishes through local ordinance what the 1989 Oregon legislature expressly prohibited through private restriction. If Ord. 2024-008's definitional framework was developed as a template replicable across Oregon's planned communities, the interference with Plaintiff's Fair Housing Act rights is not an isolated act but a component of a coordinated scheme to circumvent a 35-year statutory framework protecting the housing rights of persons with disabilities. Plaintiff's pending public records request (¶42) seeks communications bearing directly on this coordination, and discovery in this action will further develop the evidentiary basis for this theory.

**I. Plaintiff's Application for Residential Facility Further Establishes Deschutes County Had Direct Knowledge of Her Intent to Develop as early as 2015.**

45. The Property consists of two assessor accounts held by Plaintiff as tenants in common with the Benjamin Clapa Revocable Trust, each party holding an undivided 50% interest. Account No. 197279 (Map and Taxlot 191128CA01702), the improved parcel, contains 3.75 assessor acres and is improved with a 15,062 square-foot commercial structure and a 2,407 square-foot mechanical building constructed in 2006. Account No. 269813 (Map and Taxlot 191128CB07100), the vacant parcel, contains 5.01 assessor acres and carries no structural improvements. Together the two accounts comprise 8.76 acres, as confirmed by Partition Plat No. 2022-14. *See* Exhibit B. Plaintiff's damages claims are limited throughout to her 50% undivided ownership interest.

46. Plaintiff acquired her 50% interest in the Property in 2016, following the Bank of the Cascades short sale recorded August 8, 2016 (Instrument No. 2016-32305), at a combined purchase price of $1,500,000. At the time of acquisition, "residential home" (formerly DCC 18.108.150(A), item 13) and "residential facility" (formerly item 14) were both permitted outright uses in that zone. Plaintiff's acquisition was made in direct reliance upon those permitted use rights.

47. Prior to acquiring her ownership interest, Plaintiff confirmed with Deschutes County Senior Planner Will Groves through documented written communications in May 2015 that the intended residential facility use was a permitted outright use applicable to the Property. In November 2015, Plaintiff expressly authorized, directed, and ratified the filing of Land Use Application File No. 247-15-000646-SP with Deschutes County Community Development Department; Christian Myers, acting solely as Plaintiff's disclosed agent and holding no ownership interest in the Property, executed and submitted that application on Plaintiff's behalf

COMPLAINT                                    27

and at her specific direction.[4] The application sought site plan review approval to convert the Property's existing commercial structure to an adult residential care facility under ORS 443.400– 443.455, placing the County on specific, documented notice of Plaintiff's disability-related development intent before she completed acquisition. *See* Exhibit C.

**J. Property Devaluation After Removal of Permitted Residential Facility Use**

48. The Deschutes County Assessor's records for the Property, dated March 16, 2026, attached hereto as Exhibit B, document the following real market values as of January 1 of each year. Account No. 197279 (improved parcel): 2021–22: $1,500,000; 2022–23: $925,790; 2023– 24: $2,174,320; 2024–25: $2,885,900; 2025–26: $2,408,140. Account No. 269813 (vacant land parcel): 2021–22: $279,340; 2022–23: $290,510; 2023–24: $545,600; 2024–25: $709,280; 2025–26: $591,860.

49. In the assessment cycle immediately preceding the enactment of Ordinance 2024-008, the combined real market value of the two Property accounts increased by $875,260. Following the recording of Ordinance 2024-008 on October 14, 2024 and its effective date of January 7, 2025, the combined assessed real market value declined by $595,180 in a single assessment cycle, reversing the established appreciation trend in its entirety.

50. The sum of the foregone appreciation that would have continued absent the ordinance ($875,260) and the actual measured decline ($595,180) represents a total trend-adjusted economic impact of $1,470,440 on the combined Property. Plaintiff's 50% ownership interest reflects an attributable economic impact of not less than $735,220, exclusive of continuing loss of use value accruing each day the ordinance remains in effect.

---

[4] Christian Myers served solely as Plaintiff's disclosed agent in filing Application No. 247-15-000646-SP and holds no ownership interest in the Property. He is not a party to this action and is not a required party under FRCP 19.

51.  Account No. 269813, the vacant land parcel, is the most direct indicator of use-right valuation. Its real market value rose from $290,510 (January 1, 2023) to $709,280 (January 1, 2024)—a 144 percent increase—in the cycle during which the Property's residential facility development plans were publicly known and active. Following enactment of Ordinance 2024-008, its value declined to $591,860 (January 1, 2025), a reduction of $117,420 or 16.6 percent in a single assessment cycle. Because this parcel carries no structures, its assessed value is the most legally precise measure available of the use-right value the ordinance eliminated.

52.  The Property was acquired and has been held specifically for development as a licensed residential care facility under ORS 443.400 to 443.455. A 30-bed residential care facility operating at market rates prevailing in the Sunriver-area market can generate approximately $1,860,750 in annual gross revenue at 85% occupancy, with a net operating income of approximately $558,225 annually. Capitalized at an 8% rate and adjusted for development costs, the present going-concern value of the lost development opportunity is not less than $3,900,000. In addition to this capital loss, Plaintiff has foregone net operating income of approximately $48,352 per month from the date of the unlawful restriction through the anticipated date of judgment. *See* Exhibit D (residential care facility market rate comparables for the Sunriver-Bend corridor).

53.  In reliance upon the permitted residential facility use right applicable to the Property from the time of Plaintiff's 2016 acquisition through January 7, 2025, Plaintiff incurred investment expenditures directed specifically toward developing the Property as a licensed residential facility, including: land use application fees for File No. 247-15-000646-SP; architectural, planning, or design fees; ORS 443 licensing consultation costs; professional fees

paid in connection with the residential care development plan; and carrying costs specifically attributable to that development plan. *See* Exhibit D.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**Fair Housing Act — 42 U.S.C. §§ 3604(f)(1) and 3604(f)(2)**

***Disability Discrimination in Availability and Terms of Dwellings***

54.    Plaintiff realleges paragraphs 1 through 53 as if fully set forth herein.

55.    42 U.S.C. § 3604(f)(1) makes it unlawful to make unavailable or deny a dwelling to any person because of a handicap of the buyer, renter, or any person intending to reside in the dwelling. Section 3604(f)(2) makes it unlawful to discriminate in the terms, conditions, or privileges of sale or rental of a dwelling because of disability.

56.    "Residential homes" and "residential facilities" are dwellings within the meaning of 42 U.S.C. § 3602(b). They are structures designed and intended for occupancy as residences by persons with disabilities. The Supreme Court confirmed in *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725 (1995), that group homes and residential facilities for persons with disabilities are dwellings protected by the Fair Housing Act, and that local zoning ordinances restricting their use are subject to FHA scrutiny.

57.    By deleting residential home and residential facility from the CN District through Ord. 2024-008 § 13, Defendants made those dwellings unavailable to persons with disabilities who would reside in them, and discriminated in the terms and conditions of those dwellings by eliminating the zoning approval that is a prerequisite to their establishment. Plaintiff, as the intended operator and developer of a licensed residential facility for persons with disabilities, is a person aggrieved within the meaning of 42 U.S.C. § 3602(i). The Ninth Circuit has recognized

that operators and providers of housing for persons with disabilities have standing to assert FHA § 3604 claims arising from zoning exclusions directed at their clients because the discriminatory zoning directly injures the operator's own property and development rights. *San Pedro Hotel Co. v. City of Los Angeles,* 159 F.3d 470, 475 (9th Cir. 1998).

58.    Defendants' stated justification — alignment with ORS 197.665 and 197.667 — does not withstand scrutiny. ORS 197.667(3) expressly authorized Defendants to retain residential home and residential facility in the CN District. The County's own 2026 Housekeeping Findings admit that Ord. 2024-008 eliminated those uses beyond what any statutory purpose required and that the elimination was unintentional. The County's 2026 selective correction argument fails on the facts: the 2026 housekeeping ordinance did not reinstate residential home or residential facility in every affected sub-district except CN. It failed to reinstate those uses in RS, RM, R, CG, and CN alike. The County acknowledged the over-elimination in its own legislative findings, committed to correction, and then delivered no meaningful restoration in any of the sub-districts from which residential home and residential facility were eliminated. That pattern — public acknowledgment, commitment to correct, and systemic non-correction — is not consistent with inadvertence. It is consistent with a deliberate decision to allow Ord. 2024-008's elimination of disability-defined uses to stand across the entire Sunriver UUC, notwithstanding the County's own admission that no statutory purpose required it. CN is the specific focus of Plaintiff's targeted injury; the system-wide failure to restore is the broader discriminatory context that makes CN's continued exclusion indefensible on any neutral planning rationale.

59.    Defendants acted with discriminatory intent. The deletion of exactly two disability-defined uses from most sub-districts, reflects disability as an adverse consideration in the land

use decision, independently prohibited by ORS 197.020. This pattern satisfies multiple factors identified by the Supreme Court as probative of discriminatory intent under *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 267–68 (1977): the decision's impact falls disproportionately on a protected class; the county departed from its prior uniform treatment of residential uses across sub-districts; the county had direct, documented advance notice of Plaintiff's disability-related development plans from its own senior planning staff; and the county's 2026 acknowledgment of the over-elimination followed by its failure to meaningfully restore those uses in any affected zone further evidences that the system-wide elimination of disability-defined uses is not inadvertent.

60.    In the alternative, and without waiving the intentional discrimination theory set forth in paragraph 59, Defendants' conduct independently violates 42 U.S.C. §§ 3604(f)(1) and (f)(2) under a disparate impact theory. The Supreme Court confirmed in *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 540 (2015), that disparate impact claims are cognizable under the Fair Housing Act. Ordinance No. 2024-008, Section 13, facially and in practical effect imposes a disproportionate adverse burden on persons with disabilities: it eliminates the only two permitted uses in the CN District defined entirely by the disability status of their residents, while all other uses serving non-disabled populations remain intact. This differential effect is not justified by any legitimate business necessity. The availability of disparate impact claims in the zoning context is independently compelled by the FHAA's own legislative history. During the 1988 congressional proceedings, the House Judiciary Committee specifically considered and rejected a proposed amendment that would have insulated zoning decisions from FHA liability absent proof of discriminatory intent. Congress declined to add that intent requirement and instead maintained the "otherwise make

unavailable" language — drawn from anti-discrimination employment law, referring to consequences rather than intent — that the Supreme Court confirmed in *Inclusive Communities* encompasses disparate impact claims. That congressional choice forecloses any argument that the County's assertion of neutral planning purpose provides a defense to disparate impact liability arising from the facially discriminatory effect of eliminating the only two disability-defined uses from the only sub-district where Plaintiff's Property is located. The County's own 2026 Housekeeping Findings—expressly acknowledging that the elimination exceeded any statutory purpose and yet delivering no meaningful restoration in any affected zone—conclusively negate any claim of necessity or justification, leaving no basis to defend the disparate burden on persons with disabilities as a proportionate means to a legitimate end.

61. Plaintiff is an aggrieved person under 42 U.S.C. § 3602(i). Plaintiff is entitled to declaratory and injunctive relief, compensatory damages, and attorney fees under 42 U.S.C. § 3613(c).

## SECOND CLAIM FOR RELIEF

### Fair Housing Act — 42 U.S.C. § 3617

### *Interference with Fair Housing Rights*

62. Plaintiff realleges paragraphs 1 through 61 as if fully set forth herein.

63. 42 U.S.C. § 3617 makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of any right granted or protected by sections 3603–3606 of the Fair Housing Act.

64. Plaintiff has exercised rights protected under 42 U.S.C. § 3604(f) by attempting to develop and use the Property as a licensed residential facility for persons with disabilities and by publicly declaring her intent to do so.

65.    Defendants' enactment and continued enforcement of Ord. 2024-008 § 13 directly interferes with Plaintiff's exercise of those rights. The Ninth Circuit has recognized that governmental zoning actions that eliminate or restrict housing options for persons with disabilities constitute "interference" within the meaning of § 3617 when the governmental action directly impairs the exercise of rights protected under §§ 3603–3606. *Community House, Inc. v. City of Boise,* 490 F.3d 1041, 1057 (9th Cir. 2007). The governmental nature of Defendants' action does not insulate it from § 3617 liability; governmental actors are expressly subject to § 3617's prohibition. A zoning action that eliminates disability-defined uses in direct response to a known property owner's publicly declared intent to develop for disability-related residential purposes constitutes unlawful interference with the exercise of Fair Housing Act rights independent of any showing of third-party coordination.

66.    To the extent Defendants' zoning action was motivated by or coordinated with SROA/SRLP's private exclusion campaign, that action independently constitutes unlawful interference with Plaintiff's exercise of Fair Housing Act rights under § 3617. Plaintiff's pending public records request—seeking all communications between Deschutes County staff and SROA/SRLP during planning file 247-24-000417-TA—is expected to provide evidentiary support for the coordination theory, and discovery in this action will further develop that basis.

## THIRD CLAIM FOR RELIEF

### Americans with Disabilities Act, Title II — 42 U.S.C. § 12132

#### *Exclusion from Programs and Activities of a Public Entity*

67.    Plaintiff realleges paragraphs 1 through 66 as if fully set forth herein.

68.    Title II of the ADA, 42 U.S.C. § 12132, provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the

benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

69.    Deschutes County is a public entity under 42 U.S.C. § 12131(1). Its land use regulatory authority—including the adoption and enforcement of zoning regulations under DCC Title 18—is a service, program, or activity of the County.

70.    Persons with disabilities who would reside in a licensed residential facility at the Property are qualified individuals with disabilities under 42 U.S.C. § 12131(2). They are excluded from the benefit of the County's zoning program—specifically, from the permitted residential use category that applied to the CN District before January 7, 2025—by reason of their disabilities.

71.    Plaintiff has direct standing under 42 U.S.C. § 12132 as a property owner and intended operator who has been denied the benefit of the County's zoning program by reason of the disability status of the persons she intends to house. Federal courts have held that operators of housing and services for persons with disabilities have standing under Title II to assert claims arising from zoning exclusions directed at disability-defined uses, because the exclusion directly injures the operator's ability to provide access to housing and services. *Innovative Health Systems, Inc. v. City of White Plains,* 117 F.3d 37, 47 (2d Cir. 1997). Additionally, 28 C.F.R. § 35.130(g), implementing Title II, prohibits a public entity from discriminating against any person "because of the known relationship or association" of that person with an individual with a disability. Defendants' elimination of the residential facility use from the CN District discriminates against Plaintiff by reason of her known association with and intended provision of services to persons with disabilities.

72.    In the alternative, Plaintiff has standing to assert ADA Title II claims on behalf of the persons with disabilities who would reside in the facility, as a party whose ability to provide those individuals access to housing has been directly impaired by Defendants' discriminatory exclusion.

73.    Defendants' conduct violates 42 U.S.C. § 12132 and its implementing regulations at 28 C.F.R. Part 35. Compensatory damages under ADA Title II require that Defendants acted with deliberate indifference to the rights of persons with disabilities. *Duvall v. County of Kitsap,* 260 F.3d 1124, 1138–39 (9th Cir. 2001). Deliberate indifference is established where a defendant had knowledge of a disability-related right and failed to act to prevent its violation. Defendants had specific, documented advance knowledge of Plaintiff's disability-related development plans—through Plaintiff's direct communications with Senior Planner Will Groves beginning in May 2015 and through Land Use Application File No. 247-15-000646-SP—prior to enactment of Ord. 2024-008. Despite that knowledge, Defendants enacted the ordinance, eliminating the only use rights on which Plaintiff's disability-related development depended. That sequence—documented advance knowledge followed by targeted elimination—satisfies the deliberate indifference standard required for compensatory damages. Plaintiff is entitled to declaratory and injunctive relief and compensatory damages.

## FOURTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 — Violation of Federal Rights Under Color of State Law

74.    Plaintiff realleges paragraphs 1 through 73 as if fully set forth herein.

75.    42 U.S.C. § 1983 provides a cause of action against any person who, under color of state law, deprives any citizen of the United States of rights, privileges, or immunities secured by the Constitution or laws of the United States.

76. Defendants acted under color of state law in adopting and enforcing Ord. 2024-008 § 13. Ordinance No. 2024-008 constitutes official County policy enacted by the Board of County Commissioners in its capacity as the final policymaking authority for Deschutes County land use regulation, satisfying the municipal liability requirement of *Monell v. Department of Social Services,* 436 U.S. 658 (1978).

77. By eliminating "residential home" and "residential facility" from the CN District, Defendants deprived Plaintiff of rights secured by: (a) the Fair Housing Act, 42 U.S.C. § 3604(f); (b) the ADA, 42 U.S.C. § 12132; and (c) the Equal Protection Clause of the Fourteenth Amendment, which prohibits differential treatment of persons on the basis of disability without rational basis.

78. No rational basis justifies eliminating "residential home" and "residential facility" from CN, RS, RM, CG sub-districts. Under *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 450 (1985)—the Supreme Court's controlling authority on disability group home zoning and equal protection—a municipality's differential treatment of disability-defined residential uses in its zoning code violates the Equal Protection Clause where the differential treatment is not supported by a legitimate governmental interest that would not apply equally to comparable non-disability-defined uses in the same district. In *Cleburne,* the Court struck down a city's denial of a special use permit for a group home for persons with intellectual disabilities, finding the municipality's proffered justifications legally insufficient to treat that use differently from comparable uses. The present case presents a stronger equal protection violation: Defendants did not merely impose a conditional permit requirement on disability-defined uses; they eliminated those uses entirely from CN, RS, RM, CG sub-districts while preserving every other use and while preserving the residential home and facility use only on lots owned by the

same organizations that fought Plaintiff's development since 2015, precisely SROA and Sunriver Resort, as a pretext that uses have not been extracted entirely, when in fact that's what was achieved. By zoning those properties the HOA controls its use. The County's own 2026 Housekeeping Findings acknowledge the elimination exceeded any statutory purpose, directly negating any claim of rational basis for the differential treatment. To the extent the Court applies heightened scrutiny, Defendants' conduct fails under *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 266 (1977), which recognizes that discriminatory purpose "need not be the sole motivating factor" so long as it was "a motivating factor in the decision."

79.    As a result, Plaintiff has suffered economic harm including loss of an established permitted use right and loss of property value. Plaintiff is entitled to compensatory damages, declaratory relief, injunctive relief, and attorney fees under 42 U.S.C. § 1988.

### FIFTH CLAIM FOR RELIEF

**Declaratory Judgment — 28 U.S.C. §§ 2201–2202**

*ORS 197.020, ORS 197.665, and ORS 197.667(3)*

*(Pendent State Law Claims — 28 U.S.C. § 1367)*

80.    Plaintiff realleges paragraphs 1 through 79 as if fully set forth herein.

81.    This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a) because they form part of the same case or controversy as Plaintiff's federal claims. Plaintiff's state law claims do not require exhaustion of administrative remedies before the Oregon Land Use Board of Appeals ("LUBA") as a precondition to federal court jurisdiction. LUBA review is available for "land use decisions" under ORS 197.825, but a facial challenge to the constitutional and statutory validity of a legislative zoning enactment is not required to be

channeled through LUBA before presentation to a court of competent jurisdiction. Plaintiff's state law claims challenge the facial legislative validity of Ord. 2024-008 § 13, are pendent to Plaintiff's federal constitutional and statutory claims over which this Court has original jurisdiction, and do not implicate the adjudicative permit review for which LUBA was established. Claims brought in federal court are not subject to state administrative exhaustion requirements. *Patsy v. Board of Regents,* 457 U.S. 496 (1982) (§ 1983 claims require no exhaustion).

82.    ORS 93.270(3) voids any condition, restriction, or limitation in a conveyance of real property that restricts the use of property on the basis of disability. The recorded deed restrictions and governing documents SROA/SRLP has enforced against Plaintiff's Property are void and unenforceable under ORS 93.270(3). The County's adoption of Ord. 2024-008 § 13 accomplished through public zoning authority the same disability-based exclusion that ORS 93.270(3) renders void through private instruments, in direct conflict with the legislature's declared policy at ORS 197.663.

83.    ORS 197.020 provides that physical disability shall not be an adverse consideration in making a land use decision. Ord. 2024-008 § 13 is a land use decision in which disability was a central adverse consideration—the uses eliminated were the only two uses in the UUC District defined by the disability status of their residents.

84.    ORS 197.665 mandates that residential homes shall be permitted uses in any residential zone allowing single-family dwellings. ORS 197.665's directive that residential homes "shall be a permitted use" is mandatory and self-executing—a command to counties, not a permissive grant subject to local override. A county ordinance that conflicts with this mandatory state statutory command is preempted under Oregon's framework of state supremacy in land use

regulation. By first deleting DCC 18.116.210's equivalence rule—which operationalized ORS 197.665's mandate within the DCC—and then pointing to the absence of that rule as justification for deleting residential home from most Sunriver Districts, Defendants manufactured a conflict with ORS 197.665's mandatory standard. To the extent the CN District does not independently qualify as a zone "allowing for the development of single-family dwellings" under ORS 197.665—a characterization Defendants may assert—the ORS 197.665 claim operates as an alternative and cumulative ground for relief that does not depend on CN's single-family use status. The primary and independently sufficient statutory basis for Plaintiff's declaratory claim is ORS 197.667(3), which authorizes residential facilities "in a residential zone other than those described in subsections (1) and (2) of this section, including a zone where a single-family dwelling is allowed"—language that by its plain terms extends permissive authority beyond single-family zones and expressly encompasses the CN District. ORS 197.667(3)'s permissive authorization does not require that the relevant zone allow single-family dwellings as a predicate condition; the phrase "including a zone where a single-family dwelling is allowed" is illustrative of the breadth of the authorization, not a limitation upon it. See *Springfield Education Ass'n v. Springfield School Dist. No.* 19, 290 Or. 217, 223 (1980) (statutory term "including" is ordinarily a term of enlargement, not restriction). ORS 197.667(3)'s permissive authorization must be read in its chapter 564 context. The legislature that enacted subsection (3) simultaneously enacted ORS 93.270(3) to void private deed restrictions achieving the same disability-based residential exclusion. The legislature thus understood that sub-district-specific zoning exclusions were a known and documented mechanism of disability-based residential exclusion — the same mechanism ORS 93.270(3) addressed in the private deed context — and expressly authorized the facilitative pathway of subsection (3), of ORS 197.667, to ensure counties could not accomplish

COMPLAINT                                                40

sub-district exclusions through their zoning codes. When a county eliminates a use that subsection (3) expressly authorizes, it does not exercise local discretion; it acts against the statute's express anti-exclusion command while using the permissive framing as cover. The County's invocation of subsection (3) as authority for the CN deletion inverts the provision's evident purpose in the same way it inverted ORS 197.667's overall structure: using an inclusion-guarantee statute as authority for disability-based exclusion. Defendants' elimination of residential home and residential facility use from CN, while removing it in zones with single-family use status, cannot be justified by ORS 197.667(3)'s text under any construction of that provision.

85.    ORS 197.667(3) expressly authorizes the County to allow residential facilities in any residential zone, including single-family zones. By eliminating "residential home" and "residential facility" use from CN (Community Neighborhood), RS (Single-Unit Residential), RM (Multi-Unit Residential), CG (Community General), and C (Commercial), the County applied ORS 197.667, unilaterally and not selectively or inconsistently, contrary to its text and purpose, excluding everyone practically.

86.    An actual, justiciable controversy exists between Plaintiff and Defendants. Plaintiff is entitled to a declaratory judgment under 28 U.S.C. §§ 2201–2202 and ORS 28.010 that Ord. 2024-008 § 13, insofar as it deletes "residential home" and "residential facility" from the CN District's permitted use list, violates ORS 197.020, ORS 197.665, and ORS 197.667, and is therefore void and unenforceable.

COMPLAINT                                    41

## SIXTH CLAIM FOR RELIEF

## Fifth Amendment Takings Clause, as Incorporated Against the States by the Fourteenth Amendment

## 42 U.S.C. § 1983 — Regulatory Taking — *Penn Central / Lucas* — Just Compensation

87.    Plaintiff realleges paragraphs 1 through 86 as if fully set forth herein.

88.    The Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides that private property shall not be taken for public use without just compensation. Under *Knick v. Township of Scott,* 588 U.S. 180 (2019), a property owner whose property has been taken by a local government may bring a claim directly in federal court under 42 U.S.C. § 1983 without exhausting state court remedies.

89.    Plaintiff's ownership interest in the Property constitutes protected private property under the Fifth and Fourteenth Amendments. The permitted use rights applicable to the Property at the time of Plaintiff's 2016 acquisition—specifically, the outright-permitted designation of "residential home" and "residential facility" under DCC 18.108.150(A)—are cognizable property interests protected by the Takings Clause. *See Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1030 (1992); *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 124 (1978).

90.    By enacting and enforcing Ordinance No. 2024-008, Section 13, Defendants eliminated those permitted use rights as applied to the CN District where Plaintiff's Property is located, without providing any compensation to Plaintiff.

91.    Under the *Penn Central* balancing framework, the following three factors each independently support—and in combination conclusively establish—a regulatory taking:

(a)    *Economic Impact.* The Deschutes County Assessor's records establish a combined real market value decline of $595,180 across the two Property accounts in the single assessment cycle following enactment of Ordinance 2024-008. Accounting for the documented prior-year appreciation trend of $875,260 that the ordinance arrested and reversed, the total trend-adjusted economic impact on the Property is $1,470,440, of which Plaintiff's 50% interest represents not less than $735,220. The vacant land parcel (Account 269813) declined $117,420 in a single assessment cycle, confirming the market directly priced in the loss of residential facility use rights.

(b)    *Interference with Distinct Investment-Backed Expectations.* Before acquiring her ownership interest in 2016, Plaintiff personally confirmed with Deschutes County Senior Planner Will Groves, in documented written communications dated May 2015, that the intended residential facility use was a permitted outright use under the then-applicable CN District zoning. In November 2015, Plaintiff filed Land Use Application File No. 247-15-000646-SP with Deschutes County CDD, seeking site plan approval for a residential care facility—the precise use category that Ordinance 2024-008 subsequently eliminated. Plaintiff acquired her 50% interest in 2016 in direct and documented reliance on those permitted zone use rights, which remained continuously available for nine years until the County eliminated them on January 7, 2025. Nine years of documented reliance, supported by pre-acquisition governmental confirmation from the County's own senior planning staff, constitutes the paradigmatic reasonable investment-backed expectation protected by the Takings Clause.

(c)    *Character of the Governmental Action.* The character of Defendants' action is inconsistent with a general exercise of the police power. Ordinance 2024-008 § 13

imposed a broad regulatory burden across the Sunriver UUC generally and it deleted exactly two uses from exactly one sub-district that expressed intent to develop a residential facility, just so that the policy change remains consistent with ORS 197.667. The County's own 2026 housekeeping findings acknowledge the deletion exceeded any statutory purpose. Unlike the temporary development moratorium in *Tahoe-Sierra Preservation Council v. Tahoe Regional Planning Agency,* 535 U.S. 302 (2002)—where the Court emphasized the temporary character of the burden and the prospect of future restoration— Defendants' elimination of residential home and residential facility from the CN District is permanent. The 2026 housekeeping ordinance's failure to restore those uses in any affected zone, combined with the County's own admission that restoration was intended, confirms that the continued elimination reflects a deliberate legislative choice, not an oversight or administrative error.

92.    Plaintiff's primary takings theory is the *Penn Central* balancing analysis set forth in ¶91, which is independently sufficient to establish a compensable regulatory taking. The following *Lucas* alternative is pleaded as a back-stop and does not depend on *Penn Central*'s failure. In the alternative, and specifically as to Account No. 269813 (Map and Taxlot 191128CB07100), Plaintiff asserts a categorical taking under *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003 (1992). That parcel carries no structural improvements. Its entire assessed real market value—which rose to $709,280 as of January 1, 2024, in direct reflection of its residential facility development potential—is derived solely from its permitted use rights. Because "residential home" and "residential facility" were the only economically productive uses available to Plaintiff for this unimproved parcel under CN District zoning, their elimination deprived Plaintiff of all economically beneficial or productive use of her 50% ownership interest

in Account No. 269813 within the meaning of *Lucas,* 505 U.S. at 1015. Defendants may argue that Account 269813 retains residual assessed value of $591,860 and therefore has not been deprived of all economically beneficial use. That argument fails under *Palazzolo v. Rhode Island,* 533 U.S. 606, 631 (2001), which holds that residual assessed value reflecting passive land holding does not preclude a *Lucas* categorical taking claim where the productive development uses have been eliminated. The present case is also categorically distinguishable from *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,* 535 U.S. 302 (2002), which the County may invoke in opposition to the *Lucas* categorical taking theory. *Tahoe-Sierra* rejected a *Lucas* categorical taking claim arising from a temporary development moratorium, reasoning that temporary deprivations do not destroy all value in the property when analyzed across the full temporal dimension of the owner's investment. 535 U.S. at 332. That reasoning has no application here. The elimination of residential home and residential facility from the CN District through Ord. 2024-008 § 13 is not a temporary moratorium pending regulatory review; it is a permanent legislative deletion with no stated expiration, no restoration pathway, and — as confirmed by the County's own 2026 housekeeping proceedings — a deliberate refusal to reinstate those uses even after the County publicly acknowledged the elimination was over-broad. *Tahoe-Sierra* itself distinguished permanent elimination from temporary restriction, noting that a regulation "that permanently denies all economically beneficial use" remains within *Lucas's* categorical rule. 535 U.S. at 330. Ord. 2024-008 § 13 is exactly such a permanent elimination. The *Tahoe-Sierra* temporal segmentation analysis accordingly has no bearing on the *Lucas* claim asserted as to Account No. 269813. The $591,860 assessed value of Account 269813 reflects passive holding value, not the economically productive residential facility development rights that Ordinance 2024-008 eliminated. Because

those eliminated use rights constituted the only viable productive development pathway for this parcel, their elimination constitutes a categorical taking requiring just compensation without further *Penn Central* balancing. To the extent the Court finds that Account 269813's residual assessed value of $591,860 forecloses a *Lucas* categorical taking, Plaintiff submits that the *Penn Central* analysis in ¶91 applies independently to that parcel and establishes a compensable taking on those facts alone, because the character and economic impact factors identified in ¶91(a) and (c) are derived substantially from the loss of use rights on the vacant parcel, which carried no pre-existing structural uses that might otherwise explain residual value retention.

93.    Defendants' conduct was undertaken under color of state law. Defendants' taking is directly actionable under 42 U.S.C. § 1983 pursuant to *Knick,* 588 U.S. at 190–92, and no exhaustion of state court remedies is required.

94.    Plaintiff has not been offered and has not received any compensation from Defendants for the taking of her property rights. The taking is ongoing. Plaintiff is entitled to just compensation for the full extent of the taking, measured from January 7, 2025, through the date of payment, including the fair market value of the eliminated use rights as of the date of taking and interest accrued thereafter.

95.    Plaintiff is entitled to just compensation under the Fifth and Fourteenth Amendments, declaratory relief establishing that a compensable taking has occurred, and attorney fees under 42 U.S.C. § 1988.

**SEVENTH CLAIM FOR RELIEF**

**ORS 93.270(3); ORS 197.020; ORS 197.663**

**Public Zoning as Instrumentality of Private Exclusion — Void as Against Legislative Policy**

96.    Plaintiff realleges paragraphs 1 through 95 as if fully set forth herein.

**Statutory Framework.**

97.    ORS 93.270(3) provides: "Any condition, restriction or limitation in a conveyance of real property that restricts the use of the property [on the basis of disability] . . . is void." The Oregon legislature enacted this provision as part of Oregon Laws 1989, chapter 564, the same package that produced ORS 197.663 through 197.670. The legislature's stated purpose, codified at ORS 197.663, was to ensure that disabled persons "are entitled to live as normally as possible within communities and should not be excluded from communities because of their disability or age."

98.    ORS 197.020 extends the same prohibition to public land use decisions: "Age, gender or physical disability shall not be an adverse consideration in making a land use decision as defined in ORS 197.015." Whether ORS 197.020's prohibition extends to legislative zoning enactments is a question of first impression under Oregon law whose answer is dictated by the statute's plain text. ORS 197.015(10) defines "land use decision" to include a final decision or determination made by a local government concerning "the adoption, amendment, or application of" land use regulations—which expressly encompasses the legislative enactment of Ord. 2024-008 § 13. The County's adoption of that ordinance is therefore a "land use decision" within the statutory definition, and ORS 197.020's prohibition applies to it directly.

**The County Accomplished Through Zoning What the Legislature Prohibited Through Private Restriction.**

99.    Plaintiff's primary state law declaratory relief rests on ORS 197.020 and ORS 197.667(3), addressed in the Fifth Claim, which independently require invalidation of Ord. 2024-008 § 13 as applied to the CN District. The following anti-circumvention theory under ORS 93.270(3) is pleaded as a cumulative and alternative ground. Whether ORS 93.270(3)'s

COMPLAINT                                    47

prohibition on disability-based use restrictions in conveyances of real property extends, through its animating legislative policy codified at ORS 197.663, to a county zoning ordinance that accomplishes the same exclusionary result is a question of first impression under Oregon law. Plaintiff submits that the answer is yes for the following reasons, and that the question warrants certified resolution if the Court determines federal grounds do not dispose of the entire controversy. ORS 93.270(3) renders void any recorded instrument that restricts the use of the Property to exclude disability-defined residential uses. SROA/SRLP's deed restriction enforcement—which sought exactly that exclusionary result—is thus void and unenforceable under state law. The County's adoption of Ord. 2024-008 § 13 accomplished through public zoning authority the same exclusionary result that ORS 93.270(3) prohibits through private restriction. The textual foundation for this principle is that ORS 93.270(3) is not, in operative effect, a deed-context statute — it is a use-right protection statute. What it voids is not the instrument type but the restriction on property use: any condition, restriction, or limitation that restricts "the use of the property" on the basis of disability is void and unenforceable. The unit of legal protection is the right to use real property for ORS 443-licensed disability-defined residential purposes — not the deed instrument through which that right may be attacked. ORS 197.667 is also a use-right protection statute. It operates in the zoning context rather than the deed context, but it protects the same underlying right — the right to use real property for disability-defined residential purposes — against the same prohibited outcome. Both statutes were enacted in the same chapter 564 legislative package because the legislature understood that both mechanisms — private deed restriction and public zoning exclusion — were being used to accomplish the same community exclusion of disabled persons. There is no principled basis for holding that the legislature intended to protect that use right from private deed restriction while

COMPLAINT                                    48

leaving it fully vulnerable to public zoning elimination. The County's anticipated argument that ORS 93.270(3) is inapplicable because Ord. 2024-008 is a zoning ordinance rather than a deed restriction confuses the legal instrument with the protected use right — the exact formalism the 1989 legislature foreclosed by enacting both provisions in the same coordinated act. Even if the Court declines to extend ORS 93.270(3)'s text to a county ordinance, the legislative policy codified at ORS 197.663 — that disabled persons shall not be excluded from communities through any mechanism — operates as an independent canon of construction for ORS 197.020 and ORS 197.667(3), requiring a construction of those statutes that forecloses the exclusionary result regardless of which legal instrument achieves it. Although ORS 93.270(3) by its terms applies to "conditions, restrictions, or limitations in a conveyance of real property," the legislative prohibition it embodies—that disability-based exclusion of residential uses is void as against public policy—operates as an anti-circumvention principle against any mechanism that accomplishes the same exclusionary purpose. The legislature's declaration at ORS 197.663 that disabled persons "shall not be excluded from communities because of their disability" is a statement of statewide policy that applies to all mechanisms of exclusion—public and private, formal and informal—simultaneously. Even if the Court declines to extend ORS 93.270(3) to a county ordinance as a matter of statutory text, the legislative policy codified at ORS 197.663— that disabled persons shall not be excluded from communities—operates as an independent canon of construction for ORS 197.020 and ORS 197.667(3), commanding a construction of those statutes that forecloses the same exclusionary result regardless of which legal instrument achieves it. The anti-circumvention theory thus functions alternatively as a construction principle supporting the Fifth Claim even if it does not independently void Ord. 2024-008 § 13 under ORS 93.270(1)'s text.

COMPLAINT                                    49

100. The mechanism of exclusion differs—county ordinance rather than recorded deed restriction—but the legislative prohibition is the same. A county cannot use its zoning authority to accomplish what the legislature has declared void as against public policy in private instruments. To hold otherwise would render ORS 93.270(3)'s protection meaningless: a private homeowners association frustrated by the statute's voiding of its deed restrictions could simply petition the county to achieve the same exclusionary result through a zoning ordinance. The 1989 legislative scheme was designed to foreclose that end-run by closing every avenue of exclusion simultaneously.

**The Sequential Pattern of Exclusion.**

101. SROA/SRLP's private restriction enforcement began before 2019. Plaintiff filed her HUD FHA complaint in August 2019. After six years of HUD inaction, the County enacted Ord. 2024-008 § 13 in October 2024—surgically deleting the only two disability-defined uses from the CN District while Plaintiff's HUD complaint remained pending. The sequential escalation from void private restriction to public zoning elimination, targeting the same Plaintiff, the same Property, and the same disability-related use, constitutes a continuing pattern of exclusion that both ORS 93.270(2) and ORS 197.020 independently prohibit.

**Land Use Decision Adverse to Disability.**

102. ORS 197.020 independently establishes that physical disability may not be an adverse consideration in any land use decision. The enactment of Ord. 2024-008 § 13 was a land use decision in which disability was the central adverse consideration: the two uses deleted were the only two uses in the CN District defined by the disability status of their residents. No other use on the sixteen-item CN District permitted list is disability-defined. The surgical deletion of exactly those two uses from exactly the one sub-district containing Plaintiff's Property,

following documented county knowledge of Plaintiff's disability-related development intent, establishes that disability was an adverse consideration in the land use decision in violation of ORS 197.020.

**Relief.**

103.   Plaintiff is entitled to a declaratory judgment under 28 U.S.C. §§ 2201–2202 that: (a) any recorded instrument restricting disability-defined residential uses on the Property, are void and unenforceable under ORS 93.270(3); (b) Ord. 2024-008 § 13, insofar as it deleted residential home and residential facility from the CN District, constitutes a land use decision in which disability was an adverse consideration in violation of ORS 197.020; and (c) the adoption and enforcement of Ord. 2024-008 § 13 against Plaintiff's Property constitutes the public instrumentalization of a private exclusionary campaign that the legislature prohibited at ORS 93.270(3) and ORS 197.663.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Persida Myers respectfully prays for judgment against Defendants Deschutes County, Oregon, and the Board of County Commissioners of Deschutes County, jointly and severally as applicable, as follows:

Declaratory and Injunctive Relief

1.   A declaratory judgment that Deschutes County Ordinance No. 2024-008, Section 13, insofar as it deletes "residential home" and "residential facility" as permitted uses from the Community Neighborhood (CN) District of the Sunriver Urban Unincorporated Community Zone (DCC 18.108.150), violates the Fair Housing Act, 42 U.S.C. §§ 3604(f)(1), 3604(f)(2), and 3617; Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132; 42 U.S.C. § 1983; ORS 197.020; ORS 197.665; ORS 197.667; ORS 93.270(3); and further that any recorded deed

COMPLAINT                                    51

restriction or governing instrument that restricts disability-defined residential uses on the Property is void and unenforceable under ORS 93.270(3) and contrary to the legislative policy codified at ORS 197.663, and that Deschutes County cannot prevent development based on those deed restrictions.

2.    A declaratory judgment that Deschutes County Ordinance No. 2024-008, insofar as it deleted DCC 18.116.210 — the equivalence rule implementing ORS 197.665's mandatory command that residential homes shall be permitted in the same manner as single-family dwellings — created a manufactured conflict with ORS 197.665 that is void and unenforceable; that ORS 197.665's mandatory equivalence command operates independently of and is not contingent upon the existence of any local implementing rule; and that any Deschutes County zoning ordinance or code amendment that accomplishes residential home or residential facility elimination by first removing an ORS 197.665 implementation mechanism and then using the resulting gap as authority for the elimination violates ORS 197.665 and is preempted by state law;

3.    A declaratory judgment that Deschutes County Ordinance No. 2024-008, insofar as it eliminated residential home and residential facility from zones in the Sunriver UUC beyond what any applicable statutory mandate required — as the County's own 2026 Housekeeping Findings expressly acknowledge — violated ORS 197.665 and ORS 197.020 as applied to each affected zone, not only the CN District;

4.    A declaratory judgment that the zoning approach embodied in Ord. 2024-008 — specifically, the elimination of a local equivalence rule implementing ORS 197.665's mandatory command followed by sub-district-specific removal of residential home and residential facility uses — constitutes an impermissible method of circumventing ORS 197.663's declaration that

COMPLAINT                                          52

persons with disabilities shall not be excluded from communities, ORS 197.665's mandatory use equivalence command, and ORS 93.270(3)'s prohibition on disability-based use restrictions, regardless of whether that approach is applied in a single ordinance or as a template replicated across multiple Oregon counties or planned community jurisdictions; and that any county zoning ordinance employing this definitional manipulation framework is void as a matter of Oregon land use law and preempted by the 1989 statutory scheme;

5. A declaratory judgment that Deschutes County engaged in intentional disability discrimination through its zoning authority by enacting Ordinance No. 2024-008 in a manner that: (a) reversed the operational effect of a 35-year Oregon statutory scheme designed to guarantee disability-related residential housing access in local zoning codes; (b) manufactured a conflict with ORS 197.665 by deleting the local implementation mechanism and then using the manufactured gap as purported statutory authority for elimination; (c) coordinated or was influenced by the same private parties whose disability-based exclusion efforts the 1989 statutory scheme was enacted to foreclose; and (d) failed to correct acknowledged over-elimination in every affected zone including the one zone containing Plaintiff's Property, confirming that the continued CN exclusion reflects disability as an adverse consideration in a land use decision in violation of ORS 197.020;

6. A permanent injunction requiring Deschutes County to: (a) reinstate "residential home" and "residential facility" as permitted outright uses in the CN District of the Sunriver UUC Zone (DCC 18.108.150), consistent with their status prior to January 7, 2025; (b) reinstate DCC 18.116.210 or re-enact a local equivalence rule in DCC Title 18 that implements ORS 197.665's mandatory command that residential homes shall be permitted in the same manner as single-family dwellings, applicable across all DCC Title 18 zones where single-family dwellings

COMPLAINT                                    53

are permitted; and (c) refrain from enacting any future ordinance, code amendment, or text amendment that eliminates residential home or residential facility as permitted uses from any Deschutes County zone through the definitional manipulation approach identified in Plaintiff's declaratory judgment claims — specifically, by first deleting an ORS 197.665 implementation mechanism and then using the resulting gap as authority for use elimination — without first demonstrating that a specific mandatory statutory prohibition precludes those uses in the affected zone, as required by ORS 197.667(3)'s express permissive authorization and ORS 197.663's anti-exclusion policy command;

7.    A preliminary injunction, pending final resolution of this action, prohibiting Deschutes County from enforcing Ord. 2024-008 § 13 to deny, condition, or delay any application for a residential home or residential facility use in the CN District, based on the following: (a) Plaintiff demonstrates likelihood of success on the merits of her FHA, ADA, and Equal Protection claims, as the County's own 2026 Housekeeping Findings constitute an admission that the CN exclusion exceeded any statutory purpose; (b) Plaintiff suffers irreparable harm not fully compensable by money damages, including loss of the disability-related development opportunity, erosion of Plaintiff's vested development rights, and the ongoing exclusion of persons with disabilities from housing at a specific property acquired for that purpose; (c) the balance of hardships tips decisively in Plaintiff's favor, as the County bears no cognizable hardship from reinstating uses it admittedly eliminated in excess of any statutory requirement; and (d) the public interest strongly favors enforcement of the Fair Housing Act's prohibition on disability-based zoning exclusions. *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1134–35 (9th Cir. 2011). Plaintiff will file a separate motion for preliminary

COMPLAINT                                54

injunction with supporting declarations and memorandum of law contemporaneously with or promptly following the filing of this complaint.

**System-Wide Scope of Preliminary Injunctive Relief — Mandatory Standard and Anti-Discrimination Requirement**

The preliminary injunction sought herein is system-wide in scope, encompassing all Sunriver UUC sub-districts from which Ord. 2024-008 eliminated residential home and residential facility: RS, RM, CG, and CN. This scope is required for two independent reasons. First, reinstatement in CN alone would reconstitute the discriminatory selective zoning pattern at a different level — creating a code in which disability-defined uses are permitted in CN but prohibited in the adjacent sub-districts from which they were simultaneously eliminated by the same ordinance — and partial compliance with the Fair Housing Act is not a legally cognizable remedy for systemic discriminatory zoning. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81 (1982). A remedy that recreates the selective treatment of disability-defined uses across sub-district lines does not eliminate the discriminatory harm; it redistributes it, and provides a new factual predicate for the uniform-restriction defense that has historically been deployed against Plaintiff's development plans. Second, to the extent this Court characterizes the reinstatement relief as a mandatory preliminary injunction requiring affirmative code amendment, the mandatory standard — that the facts and law "clearly favor" the moving party, *Dahl v. HEM Pharms. Corp.,* 7 F.3d 1399, 1403 (9th Cir. 1993) — is satisfied by the County's own 2026 Housekeeping Findings, which constitute an admission that Ord. 2024-008 eliminated residential home and residential facility in excess of any statutory purpose and with the expressed intent to restore them. A defendant whose own legislative record establishes that the challenged policy was erroneous cannot contest that the law and facts clearly favor

COMPLAINT                                     55

reinstatement. To the extent this Court declines to issue mandatory reinstatement on a preliminary basis, the prohibitory component — barring enforcement of Ord. 2024-008 § 13 across all affected sub-districts pending resolution — is prohibitory in character and independently provides system-wide preliminary relief without requiring immediate code amendment.

Compensatory Damages

8. Compensatory damages for the loss of Plaintiff's established permitted use right in the CN District from January 7, 2025, to the date of injunctive relief and/or judgment;

9. Punitive damages against any non-governmental defendant, including but not limited to SROA/SRLP and any individual actors, to the extent such defendants are added to this action or are found to have acted in concert with Defendants under color of law, in an amount to be determined by the jury. Punitive damages are not sought against Deschutes County or the Board in their governmental capacity, per *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247 (1981);

10. Compensatory damages for carrying costs, including property taxes paid on the Property during the period Defendants' discriminatory ordinance has prevented development, accruing at approximately $1,833 per month from January 7, 2025, through judgment;

11. Compensatory damages for lost development opportunity, representing the present value of the licensed residential facility development that Defendants' conduct has prevented, in an amount to be established by expert testimony and not less than $3,900,000, as supported by the market rate analysis attached hereto as Exhibit D; or

12. Alternatively, compensatory damages for lost net operating income that would have been earned from a licensed ORS 443 residential facility but for Defendants' conduct, accruing

COMPLAINT                                    56

at approximately $48,352 ($46,519 NOI + $1,833 carrying costs) per month from January 7, 2025, through judgment;

13. Compensatory damages for all out-of-pocket investment expenditures incurred in reliance on the pre-Ord. 2024-008 permitted use rights, including land use application fees, architectural and planning fees, ORS 443 licensing consultation costs, and carrying costs attributable to the residential care development plan, in an amount to be established at trial;

Fair Housing Act Damages

14. Actual damages under 42 U.S.C. § 3613(c)(1) for all economic harm proximately caused by Defendants' discriminatory conduct, in an amount not less than the total compensatory damages established above;

15. Punitive damages under 42 U.S.C. § 3613(c)(1) based on Defendants' malice and reckless indifference to Plaintiff's rights secured under the Fair Housing Act—evidenced by the deliberate retention of the discriminatory ordinance as applied to the CN District after Defendants reviewed, acknowledged, and corrected the same harm in every two affected zones—in an amount not less than $250,000 and up to $500,000; Punitive damages under § 3613(c)(1) are independently authorized by the Fair Housing Act's own remedial scheme and are not foreclosed as against governmental defendants by *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981). *Newport* construed 42 U.S.C. § 1983's remedial framework and rested on the Court's interpretation of common-law immunity principles as incorporated into § 1983; it did not purport to interpret the Fair Housing Act's separate damages provision. Section 3613(c)(1) contains no governmental immunity carveout and was enacted by Congress with full awareness of the existing § 1983 framework — its silence on any governmental defendant exception is dispositive under the canon that remedial civil rights statutes are construed broadly. *Trafficante*

COMPLAINT                                    57

*v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (1972). Several circuits have held that § 3613(c)(1) punitives are available against governmental defendants on the theory that the FHA's statutory scheme is self-contained and not subject to the common-law immunity rationale that drove *Newport*'s § 1983 holding. To the extent the Ninth Circuit has not definitively resolved this question, Plaintiff preserves the punitive damages claim under § 3613(c)(1) as against Defendants in their governmental capacity and submits that the question should be resolved in Plaintiff's favor given the FHA's broad remedial purpose and Congress's deliberate omission of any governmental immunity exception from the statute's text.

Just Compensation — Fifth Amendment Taking

16.    Just compensation under the Fifth and Fourteenth Amendments, enforceable through 42 U.S.C. § 1983 pursuant to *Knick v. Township of Scott,* 588 U.S. 180 (2019), in an amount to be proven at trial representing the fair market value of the property rights taken by Ordinance No. 2024-008, Section 13, as of January 7, 2025, together with interest from that date to date of payment, including: (a) the loss in market value of Plaintiff's 50% ownership interest in Account Nos. 197279 and 269813; (b) the value of Plaintiff's lost development rights in the vacant land parcel (Account No. 269813) whose entire assessed value was derived from those permitted use rights; and (c) all continuing loss of use value accruing from January 7, 2025 through the date of judgment;

ADA Title II and Section 1983

17.    Compensatory damages under 42 U.S.C. § 12132 and 42 U.S.C. § 1983 for Defendants' exclusion of Plaintiff from participation in the benefits of the County's zoning program by reason of disability, in an amount to be proven at trial;

COMPLAINT                                          58

Attorney Fees, Costs, and Prejudgment Interest

18.    Reasonable attorney fees and costs pursuant to 42 U.S.C. § 3613(c)(2), 42 U.S.C. § 1988, 42 U.S.C. § 12205, and any other applicable statutory basis;

19.    Prejudgment interest at the applicable rate on all liquidated damages amounts from the date of accrual through judgment;

20.    Post-judgment interest at the statutory rate until paid in full;

General Relief

21.    All equitable relief necessary to restore Plaintiff to the position she would have occupied but for Defendants' unlawful conduct, including any restitutionary or other equitable remedy available under applicable law;

22.    Such other and further relief as the Court deems just and equitable.

## VERIFICATION

I, Persida Myers, hereby declare and verify under penalty of perjury pursuant to 28 U.S.C. § 1746 and ORS 1.240 that I am Plaintiff in the above-captioned action, that the factual statements contained therein are true and correct to the best of my knowledge, information, and belief.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable, including all claims for compensatory and punitive damages under the Fair Housing Act, 42 U.S.C. § 3613(c)(1); all compensatory damages under 42 U.S.C. § 1983 arising from violations

of the Equal Protection Clause and the Fair Housing Act and ADA as incorporated through §

1983; and all compensatory damages under Title II of the Americans with Disabilities Act.[5]

Respectfully submitted,

Dated: March 20, 2026.

By: _Persida Myers_

Persida Myers, Pro Se
11216 NW Blackhawk Dr.
Portland, OR 97229
(503) 961-5007

**Exhibit A** — Ordinance 2024-008 / 2026 Housekeeping Findings

**Exhibit B** — Deschutes County Assessor Records and Deed

**Exhibit C** — Land Use Application File No. 247-15-000646-SP

**Exhibit D** — Market Rate Analysis / Residential Care Facility Comparable

---

[5] Plaintiff's Sixth Claim for Relief seeking just compensation under the Fifth Amendment Takings Clause, as incorporated against the states through the Fourteenth Amendment and made actionable through 42 U.S.C. § 1983 pursuant to *Knick v. Township of Scott,* 588 U.S. 180 (2019), is an equitable and constitutional remedy determined by the Court rather than a jury. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 718 (1999) (distinguishing jury-triable § 1983 damages from equitable just compensation). Accordingly, Plaintiff's jury demand expressly excludes the just compensation remedy sought in the Sixth Claim, which Plaintiff submits to the Court for determination. To the extent any component of the just compensation claim is determined to be jury-triable under applicable Ninth Circuit authority, Plaintiff hereby preserves that right as well.

COMPLAINT                                    60