IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

PERSIDA MYERS,                                          Case No. 6:26-cv-00555-MC

        Plaintiff,                                      OPINION AND ORDER

        v.

DESCHUTES COUNTY, a political
subdivision of the State of Oregon; and
BOARD OF COUNTY
COMMISSIONERS OF DESCHUTES
COUNTY,

        Defendants.

_____

MCSHANE, Judge:

Plaintiff Persida Myers brings this action against Defendants Deschutes County and its Board of Commissioners. She asserts claims under the Fair Housing Act ("FHA"), the Americans with Disabilities Act ("ADA"), the Equal Protection Clause of the Fourteenth Amendment and the Takings Clause of the Fifth Amendment under 42 U.S.C. § 1983 ("Section 1983"), and Oregon state law. Compl., ECF No. 1. Along with the Complaint, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 2, 2-1). The Court denied Plaintiff's request for preliminary injunctive relief (ECF No. 9) and Defendants thereafter filed a Motion to Dismiss for Failure to State a Claim. Defs.' Mot., ECF No. 13.

Because Plaintiff lacks standing to bring her discrimination claims, fails to state a takings

1 – OPINION AND ORDER

claim, and the Court lacks jurisdiction over Plaintiff's state law claims, Defendants' Motion (ECF No. 13) is GRANTED. Plaintiff's Complaint (ECF No. 1) is DISMISSED with leave to amend.

## BACKGROUND

Plaintiff is co-owner of a lot located in the Sunriver Urban Unincorporated Community ("Sunriver UUC") in Deschutes County, Oregon (the "Property"). Compl. ¶ 8. She intends to use the Property as a licensed "residential facility" to provide residential care, treatment, or training to individuals with disabilities. *Id.* ¶ 12. The Property is located in a "Community Neighborhood" ("CN") District in the Sunriver UUC. *Id.* ¶¶ 10–11. At the time Plaintiff acquired the property in 2016, the Sunriver UUC allowed for "residential home" and "residential facility" uses in the CN District, which Plaintiff confirmed with County Senior Planner Will Groves. *Id.* ¶¶ 12, 47. Plaintiff then filed an application for approval of her plan to convert the existing commercial structure on the property to an adult residential care facility. Compl. ¶ 47.

Plaintiff now challenges Deschutes County Ordinance No. 2024-008 (the "Ordinance"), which became effective on January 7, 2025. Compl. ¶ 14. Among other changes, the Ordinance amended portions of the County's land-use code to prohibit "residential home" and "residential facility" uses in the CN District in the Sunriver UUC. *Id.* ¶¶ 14–16.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of

2 – OPINION AND ORDER

misconduct." *Id.* at 679.

When considering a motion to dismiss, the court must accept all factual allegations as true and construe the alleged facts in the light most favorable to the non-movant. *Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000). Further, a court liberally construes pleadings by self-represented plaintiffs. *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## **DISCUSSION**

As a preliminary matter, Plaintiff suggests that the Court has already recognized a need for discovery in order to weigh the merits of dismissal. Pl.'s Resp. 17–18, ECF No. 14. Plaintiff misunderstands the Court's previous ruling. The Court found, in ruling on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 2), that Plaintiff had not satisfied her burden to establish likelihood of success on the merits in part because more facts were necessary. *See K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1089 (9th Cir. 1972). This statement in no way implied Plaintiff's allegations were sufficient—quite the opposite—nor does it have any bearing on the County's motion here. That discovery could reveal facts relevant to a plaintiff's claims is not a substitute for stating a claim to survive a motion to dismiss. *Iqbal*, 556 U.S. at 686 (stating if the "complaint is deficient under Rule 8 [or Rule 12], [plaintiff] is not entitled to discovery, cabined or otherwise"); *Somers v. Apple, Inc.*, 729 F.3d 953, 966 (9th Cir. 2013) (holding that plaintiff "might later establish some set of undisclosed facts" needed to state claim is not enough to survive Rule 12(b)(6) motion).

3 – OPINION AND ORDER

For the reasons set forth here, Plaintiff's Complaint is DISMISSED with leave to amend.

I.      **Standing**

Plaintiff lacks standing for her FHA, ADA, and Equal Protection claims. Whether or not the parties raise the issue, the Court has an independent obligation to determine its jurisdiction.[1] *Summers v. Earth Island Inst.,* 555 U.S. 488, 499 (2009). The Supreme Court has established three requirements for standing under Article III of the U.S. Constitution:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent . . . . Second, there must be a causal connection between the injury and the conduct complained of . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotations and citations omitted).

A. **FHA and ADA Claims**

   1. **Discrimination Claims**

Plaintiff brings discrimination claims pursuant to the FHA, 42 U.S.C. §§ 3604(f)(1)–(2), and the ADA, 42 U.S.C. § 12132. Plaintiff's insistence that she is challenging the Ordinance on its face does not eliminate the requirement of Article III standing. Standing to bring discrimination claims under the FHA *and* ADA extends to the "full limits" of Article III. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982) (holding requirement for standing under FHA is the "[Article] III minima of injury in fact"); *see also MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 333–335 (6th Cir. 2002) (citing *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 44–46 (2d Cir.1997)); *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 475 (9th Cir. 1998) (stating to establish standing under the FHA, "all [Plaintiff] need show is that the [County]

---

[1] Defendants consistently challenge the causal connection between Plaintiff's alleged harms and the Ordinance, as well as redressability.

interfered with the housing rights of the [disabled] and that, as a result, the [Plaintiff] suffered an actual injury").

Plaintiff identifies multiple forms of economic injury associated with the Ordinance preventing her from developing a residential facility at the Property. *E.g.*, Compl. at p.56. However, to the extent Plaintiff has a concrete injury, it is not fairly traceable to the Ordinance to support Article III standing. *Lujan*, 504 U.S. at 560. If the Ordinance were reversed as Plaintiff requests (Compl. at p.55), Plaintiff would still be in the same position—as Defendants points out, "no persons with disabilities reside or could reside at this time in a licensed residential facility at the Property because Plaintiff lacks the necessary local and state approvals." Defs.' Reply 4, ECF No. 15. Plaintiff dismisses this concern (Pl.'s Resp. 4), but does not otherwise address an ultimately decisive distinction between her case and the circumstances in *San Pedro Hotel*. There, the Ninth Circuit held "potential sellers of the property who were unable to sell their property to a [developer of housing accommodations primarily used to house the mentally disabled] because of the City's allegedly improper interference with an HUD loan" had standing under the FHA." *San Pedro Hotel*, 159 F.3d at 473, 475–76. Even if the sale was yet to occur, it was understood to be *contingent* on obtaining the allegedly improperly denied financing. *See id.*

No similarly intact causal chain exists as to Plaintiff's FHA claims. Those claims arise from an ordinance that became effective in 2025 while Plaintiff alleges she has been "actively pursuing . . . development since 2015." *See* Pl.'s Resp. 5. And although Plaintiff has taken steps towards the creation of the residential facility at the Property, her claims remain speculative. To illustrate, Plaintiff's alleged economic damages represent estimates of both lost income from and "present value" of a facility that does not exist outside of Plaintiff's own plans. *Cf. Walker v. City of Lakewood*, 272 F.3d 1114, 1124 (9th Cir. 2001). To be sure, Plaintiff's *intent* to develop the

5 – OPINION AND ORDER

Property is memorialized in application documents submitted to the County, which Plaintiff nowhere alleges was approved (*e.g.*, Compl. ¶¶ 46–47; *id.* Ex. C, ECF No. 1-4), and documents sent to the State.[2] However, even construing these alleged facts in the light most favorable to Plaintiff, they amount at best to the kind of "'some day' intention[s]" that cannot support standing. *Lujan*, 504 U.S. at 564. By contrast, when courts have recognized standing for disability-based treatment centers or residential facilities asserting FHA and ADA claims, those plaintiffs have alleged facts establishing a closer nexus between the prospective operator or owner, the individuals with disabilities the facility would serve, and the zoning ordinance at issue. *See, e.g.*, *A Helping Hand, LLC v. Baltimore County*, 515 F.3d 356, 362–64 & n.4 (4th Cir. 2008); *Caron Found. of Fla., Inc. v. City of Delray Beach*, 879 F. Supp. 2d 1353, 1360–64 (S.D. Fla. 2012).

In addition, Plaintiff's ADA claim revolves around the disability status of others—she does not allege *she* is a "qualified individual with a disability." *Csutoras v. Paradise High Sch.*, 12 F.4th 960, 968 (9th Cir. 2021). Such "third-party" standing may exist under the ADA, but a plaintiff has the burden of establishing the disability of the individuals whose rights the plaintiff invokes, including prospective clients. *See Bay Area Addiction Rsch. & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 730, 735 (9th Cir. 1999) (holding that although zoning ordinance discriminated on the basis of disability in violation of ADA, clinic operator plaintiff still had to show that its patients were "qualified individuals"); *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 46 (2d Cir. 2002). A complaint must contain factual allegations that meet the ADA's definition of "disability." *Shields v. Credit One Bank, N.A.*, 32 F.4th 1218, 1225–26 (9th Cir.

---

[2] Plaintiff includes a "Letter of Intent to License Assisted Living Facility and Residential Care Facility with Memory Care Endorsement" from the Oregon Department of Human Services dated July 9, 2018 with her Response to the Motion. ECF No. 14-2. Even if the Court were to consider this document, *see Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.*, 268 F.3d 1133, 1137 (9th Cir. 2001), it communicated only that Plaintiff "may proceed with the *licensing process* as described in OAR 411-054-0012 and 411- 054-0013," and did not confer any further approval. ECF No. 14-2.

2022); 42 U.S.C. § 12102(1) (defining "disability" to include "physical or mental impairment that substantially limits one or more major life activities of such individual, . . ."); *MX Grp*, 293 F.3d at 339 (discussing facts that sufficiently established prospective clients of proposed clinic were "disabled" under ADA). Here, Plaintiff states potential residents "who *would* reside in a licensed residential facility" would be qualified individuals (Pl.'s Resp. 9 (emphasis added)), but provides only conclusory statements to this effect. *E.g.*, Compl. ¶¶ 14, 70. For the reasons introduced above, Plaintiff's reference to other qualified individuals is also entirely speculative. *See Twombly*, 550 U.S. at 556; *see also Caron Found.*, 879 F. Supp. 2d at 1363.

The inadequacy of Plaintiff's allegations of intentional discrimination also reflects a failure to establish the required causal connection for standing under the FHA and ADA claims. *See Ohio House, LLC v. City of Costa Mesa*, 122 F.4th 1097, 1127 (9th Cir. 2024); *City of Oakland v. Wells Fargo & Co.*, 14 F.4th 1030, 1041 (9th Cir. 2021). While "the specific sequence of events leading up to the challenged decision also may shed some light on the decisionmaker's purposes," the timing of the Ordinance and Plaintiff's public declarations of her plans—years apart—do not support a reasonable inference of discrimination. Compl. ¶¶ 29, 45–47; *id.* Ex. C*; see Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–67 (1977) (citing cases and stating, "[f]or example, if the property involved here always had been zoned R-5 but suddenly was changed to R-3 when the town learned of MHDC's plans to erect integrated housing, we would have a far different case"). Further, Plaintiff does not point to any "contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports" that speak to discrimination in the adoption of the Ordinance. *Arlington Heights*, 429 U.S. at 268. Although Plaintiff refers to the "participation" of the same "lobbying groups" in the "develop[ment] or promot[ion]" of the Ordinance that also opposed earlier enhancements to Or. Rev. Stat. § 93.270

7 – OPINION AND ORDER

(Compl. ¶ 44), this allegation speaks only to *support for* the Ordinance, as opposed to its approval by Defendants. *See Ohio House*, 135 F.4th at 671. Plaintiff also does not allege Defendants deviated from normal procedure or substantive considerations for enacting the Ordinance. *Arlington Heights*, 429 U.S. at 269–70.

Lastly, contrary to Plaintiff's characterization, the 2026 Housekeeping Amendments[3] reaffirm the stated, non-discriminatory purpose of the Ordinance in its terms and in its effect, including with respect to the CN District.[4] In particular, single-unit dwellings were not permitted in the CN District before the Ordinance was enacted. Compl. ¶¶ 20, 23; Compl. Ex. A at p.97, ECF No. 1-2. The Ordinance and the 2026 Housekeeping Amendments therefore did not affect equivalence between residential homes and facilities and single-family dwellings in the CN District. Housekeeping Am. 2026 at p.4. Plaintiff's disagreement with the County over its *obligations* under State law do not reflect intentional discrimination. Or Rev. Stat. §§ 197.665(3), 197.667(3) (permissive provisions governing how counties "may" allow residential homes and facilities); *see United States v. Carrillo-Lopez*, 68 F.4th 1133, 1140 (9th Cir. 2023) (citing *Miller v. Johnson*, 515 U.S. 900, 916 (1995)) (applying strong "presumption of good faith" on the part of legislators).

To be sure, Plaintiff need not be the "target of the discrimination" to recover under the FHA or ADA, but she has not met the minimum requirements for standing set by Article III. *See*

---

[3] Deschutes County Planning Division, Findings-Housekeeping Text Amendments, File No. 247-26-000007-TA (2026), available at https://weblink.deschutes.org/CDD/DocView.aspx?dbid=0&repo=LFCDD&id=1393309 ("Housekeeping Am. 2026").

[4] As a public legislative document, the 2026 Housekeeping Amendments is subject to judicial notice, and a Court need not accept as true allegations that contradict that may be judicially noticed. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010). The 2026 Housekeeping Amendments provide that residential home is a permitted use in the RS and RM districts, and that a residential facility is a permitted use in the RM, C, TC, and R districts and as a conditional use in the RS district, subject to generally-applicable regulations. Housekeeping Am. 2026 at p.123–24 ("18.116.210 Residential Homes And Residential Facilities"). Plaintiff's suggestions to the contrary in the Complaint (Compl. ¶ 22) and in briefing (Pl.'s Resp. 19 (referring to "County's subsequent failure to correct it in any affected zone, including CN.")) are misleading.

8 – OPINION AND ORDER

*San Pedro Hotel,* 159 F.3d at 475. The Ordinance is not insulated from judicial review, but Ms. Myers is not the plaintiff to challenge it.

### 2. **Interference Claim**

Plaintiff also asserts an FHA "interference" claim pursuant to 42 U.S.C. § 3617. Plaintiff argues "Defendants' adoption of [the Ordinance] directly interferes with Plaintiff's exercise" of her rights protected by the FHA "by eliminating the permitted use category on which her development depends." Pl.'s Resp 8; Compl. ¶ 65. "'Interference' ranges from racially motivated firebombings, to exclusionary zoning, and insurance redlining." *United States v. City of Hayward,* 36 F.3d 832, 835 (9th Cir. 1994) (internal citations omitted). Plaintiff's FHA interference claim is effectively a relabeling of her FHA discrimination claim. Therefore, for the same reasons, Plaintiff lacks standing. In particular, Plaintiff refers to her correspondence with Groves in 2015, her purchase of the Property in 2016, a Land Use Application in 2018, and a HUD complaint in 2019, all of which are far too remote to support causation with respect to the Ordinance adopted in 2024. Pl.'s Resp. 8 (citing Compl. ¶¶ 29–30, 46–47). Even if Plaintiff had standing for an interference claim, FHA claims must meet a proximate cause standard, requiring "some direct relation" between harm and conduct. *Oakland*, 14 F.4th at 1035, 1042. Plaintiff's allegations do not plausibly establish this necessary causal link between the Ordinance and her alleged protected activity. *See Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between [a defendant's] knowledge of protected activity and an adverse [] action as sufficient evidence of causality . . . uniformly hold that the temporal proximity must be 'very close.'"); *see also Kononen v. City of Salem Hous. Auth.*, 2025 WL 2962651, at *10 (D. Or. Oct. 20, 2025).

### B. Equal Protection Claim

Plaintiff's Section 1983 claim under the Equal Protection Clause of the Fourteenth Amendment is based on allegations that disabled individuals, due to the Ordinance, are denied housing at a residential facility Plaintiff intends to develop. Pl.'s Resp. 10–11. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyer v. Doe*, 457 U.S. 202, 216 (1982)). As discussed, Plaintiff does not meet the minimum standing requirements for her FHA and ADA claims, which reach the limits of Article III. Moreover, Plaintiff's Equal Protection claim is based on alleged violations of the rights of disabled individuals who, due to the Ordinance, are denied housing at a residential facility Plaintiff intends to develop. Pl.'s Resp. 10–11. Unlike for the FHA and ADA, Plaintiff is not entitled to enforce the Equal Protection rights of others. *See San Pedro Hotel*, 159 F.3d at 474–75, 479; *see also Sw. Key Programs, Inc. v. City of Escondido*, 2017 WL 1094001, at *7 (S.D. Cal. Mar. 23, 2017). With no alleged violation of her own rights, Plaintiff lacks standing for her Equal Protection claim.

Furthermore, to prevail on an Equal Protection claim, a plaintiff "must prove that the decisionmakers in his case acted with discriminatory purpose." *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); *see also Arlington Heights*, 429 U.S. at 266. As discussed above, Plaintiff has not sufficiently pleaded intentional discrimination. In addition, though Plaintiff argues she has identified "valid comparators" in support of her claim (Pl.'s Resp. 10–11), a relevant comparator is not an *element* of a disparate treatment claim, it is merely an additional piece of circumstantial evidence. *Ballou v. McElvain*, 29 F.4th 413, 424 (9th Cir. 2022).

II.     **<u>Takings Claim</u>**

The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation. *Chicago. B. & Q.R. Co. v. Chicago,* 166 U.S. 226 (1897). Whether a taking has occurred when a regulation falls short of eliminating *all* economically beneficial or productive uses of land "depend[s] on a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action." *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001) (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)).

Plaintiff fails to state a takings claim under Section 1983 based on the Ordinance's effect on the Property. Pl.'s Resp. 11; *Knick v. Township of Scott*, 588 U.S. 180, 189 (2019). First, the Supreme Court has "uniformly reject[ed] the proposition that diminution in property value, standing alone, can establish a 'taking.'" *Penn Central,* 438 U.S. at 131 (citing *Euclid v. Ambler Realty Co.,* 272 U.S. 365 (1926) (75% diminution in value caused by zoning law), and *Hadacheck v. Sebastian,* 239 U.S. 394 (1915) (87.5% diminution in value)). As substantial as the magnitude of Plaintiff's alleged diminution in value may be, it does not weigh in favor of her claim here. More tellingly, Plaintiff's takings claim falls into the familiar category of that of a property owner adversely affected by a change in zoning law; as the Supreme Court declared in *Penn Central,* "the submission that [a plaintiff] may establish a 'taking' simply by showing that they have been denied the ability to exploit a property interest that they heretofore had believed was available for development is quite simply untenable." *Id.* at 130. Moreover, Plaintiff's *intentions*—past and ongoing—for the Property are not the same as a "primary expectation" regarding a current use of

11 – OPINION AND ORDER

the Property burdened by the Ordinance. *Laurel Park Cmty., LLC v. City of Tumwater*, 698 F.3d 1180, 1189–90 (9th Cir. 2012) (quoting *Penn Central*, 438 U.S. at 130, 136)). Finally, as to the "character of the governmental action," courts consider whether, for instance, "[the government action] amounts to a physical invasion or instead merely affects property interests through some public program adjusting the benefits and burdens of economic life to promote the common good." *Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 539 (2005) (internal quotation marks omitted). And in general, government action cannot "forc[e] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Id.* at 537 (quoting *Armstrong v. United States,* 364 U.S. 40, 49 (1960)). The Ordinance has no such effect here.

Plaintiff also introduces an "alternative" takings theory "specifically as to Account No. 269813." Pl.'s Resp. 11; Compl. ¶ 92. Plaintiff claims the removal of "residential home" and "residential facility" uses from the CN District deprived her "of all economically beneficial or productive use of her 50% ownership interest in Account No. 269813" located in the CN District. Pl.'s Resp. 11; *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992). This assertion is unsubstantiated, and the Deschutes County Code allows for substantial alternative productive uses in the CN District.[5] *See Palazzolo*, 533 U.S. at 631 (citing *Lucas*, 505 U.S. at 1019) (finding that though regulation prevented development of a beach club on portion of tract, "[a] regulation permitting a landowner to build a substantial residence on an 18–acre parcel does not leave the property 'economically idle'").

---

[5] "Uses Permitted Outright" for the CN District currently include (DCC 18.108.150): School; Utility substation, pump station, and utility equipment storage and repair yard; Sewage treatment facility; Tennis court; Swimming pool; Park, playground, and picnic and barbecue area; Recreational path; Equestrian facility; Health and fitness facility; Amphitheater; Observatory; Religious institutions or assemblies; Daycare facility; Administrative and office facility associated with a community association or community use; Community center; and Police facility.

12 – OPINION AND ORDER

### III.    <u>Supplemental Jurisdiction</u>

The federal courts' "independent obligation to ensure that they do not exceed the scope of their jurisdiction" extends to subject matter jurisdiction. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). The Court has subject matter jurisdiction over Plaintiff's claims arising under federal law pursuant to 28 U.S.C. § 1331. However, supplemental jurisdiction is necessary for Plaintiff's state law claims. 28 U.S.C. § 1367. For supplemental jurisdiction, the state law claims must arise from "a common nucleus of operative fact" as a federal claim, such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Having dismissed Plaintiff's claims arising under federal law, there is no source of supplemental jurisdiction for Plaintiff's remaining state law claims. Plaintiff's claims asserted pursuant to Or. Rev. Stat. §§ 93.270(3), 197.020, and 197.663 are therefore dismissed for lack of subject matter jurisdiction.

### IV.    <u>Leave to Amend and Rule 8 Compliance</u>

Leave to amend shall be liberally granted and the Court will do so here. Fed. R. Civ. P. 15(a). However, Plaintiff is advised that any amended complaint she chooses to file must comply with Federal Rule of Civil Procedure 8. Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's Complaint is 60 pages long, includes four exhibits, and is often argumentative. Though Plaintiff appears to hold out the Complaint's length as a reason to disfavor Defendants' motion (Pl.'s Resp. 2), the Complaint instead likely violates Rule 8. Upon amendment, it is within the Court's discretion to dismiss an amended complaint that similarly violates pleading standards. *See McHenry v. Renne,* 84 F.3d 1172, 1177–80 (9th Cir. 1996) (upholding a Rule 8(a) dismissal of a complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant");

13 – OPINION AND ORDER

*Hatch v. Reliance Ins. Co.,* 758 F.2d 409, 415 (9th Cir.1985) (upholding a Rule 8(a) dismissal of a complaint that "exceeded 70 pages in length, [and was] confusing and conclusory"); *see also Monical v. Ex-Sheriff Mike Winters*, 2017 WL 11554412, at *2 (D. Or. Sept. 7, 2017).

#### CONCLUSION

Plaintiff lacks standing for her claims under the FHA, ADA, and Equal Protection Clause, and fails to state a takings claim. As a result, the Court also lacks subject matter jurisdiction over Plaintiff's state law claims. Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 13) is GRANTED. Plaintiff's Complaint (ECF No. 1) is DISMISSED with leave to amend. Plaintiff shall have thirty (30) days from the date of this Order to file an amended complaint.

IT IS SO ORDERED.

DATED this 29th day of June 2026.

s/Michael J. McShane<br>
Michael J. McShane<br>
United States District Judge

14 – OPINION AND ORDER